**ISLANDER EAST RENTAL PROGRAM and J. Ray Riley**

v.

**Bill FERGUSON, et al.**

**Civ. A. No. G–95–404.**

United States District Court, S.D. Texas, Galveston Division.

March 1, 1996.

---

James Watkins, Jr., pro se, Special Master.

J. Ray Riley, Houston, TX, Carla Jean Cotropia, George William Vie, III, Mills Shirley Eckel & Bassett, Galveston, TX, Brian

Scott Martin, Sheinfeld Maley & Kay, Houston, TX, Peter A. Nolan, Sheinfeld Maley & Kay, Austin, TX, for plaintiff Islander East Rental Program.

Ronald G. Bliss, Fulbright & Jaworski, Houston, TX, for defendants Lowry Barfield, Elizabeth Parr, James B. Penny, Lockwood Seegar, Islander East Association, Bill Ferguson.

J. Ray Riley, Houston, TX, pro se.

Jeffrey D. Roberts, Roberts Markel & Folger, Houston, TX, Brian Scott Martin, Sheinfeld Maley & Kay, Houston, TX, Peter A. Nolan, Sheinfeld Maley & Kay, Austin, TX, for counter-defendant J. Ray Riley.

### *ORDER*

KENT, District Judge.

Presently before the Court is the Motion of Plaintiff J. Ray Riley seeking to disqualify the law firm of Fulbright & Jaworski (Fulbright), counsel for Defendants Islander East Association and its Board of Directors.[1] For the reasons set forth below, the Motion is hereby **GRANTED.**

#### I.  Background

This case involves a contentious battle over condominium rentals and servicemark rights. The action was initiated by Plaintiffs Islander East Rental Program (IERP), an unincorporated association of owners (IERP participants) of residential condominiums units at the Islander East Condominium in Galveston, and J. Ray Riley, one of the IERP participants. The Defendants are the Islander East Association (the Association), the corporation established to administer the Islander East Condominium regime, as well as the individual condominium owners serving as directors of the Association.

The IERP has existed for approximately seventeen years, developing a base of customers who regularly rent through the IERP. IERP participants give the IERP the exclusive right to rent their condominium units and agree to be bound by the IERP's organizational rules, which provide that the IERP shall be operated and managed by an executive committee consisting of four participants elected by the IERP participants. Plaintiff J. Ray Riley is the chairman of the IERP executive committee.

The IERP operated from the Islander East Condominium building, paying rent to the Association for the use of an office and laundry facility constructed by the IERP at its expense. In the past, the Association and the IERP shared the costs of common telephones and the salaries of certain employees, including a joint manager. The manager was hired by the IERP to manage its condominium rental business and by the Association to manage its affairs in the administration of the regime.

According to the Plaintiffs, the IERP extensively promoted and advertised using the names "Islander East" and "Islander East Rental Program" as tradenames and servicemarks. As a result, the tradenames and servicemarks became widely recognized and distinguished the services offered by the IERP from similar services offered by others. The IERP contends it has established substantial good will in connection with its services provided under its servicemarks and tradenames.

The Plaintiffs contend that in July 1995, the Defendants abolished the IERP's executive committee and asserted complete control over the IERP, hiring a professional property manager to run the program and using the IERP servicemarks and tradenames without its consent. The Plaintiffs contend the Defendants appropriated the IERP's business to coerce the IERP participants to continue paying a disproportionate share of the ex-

---

1.  Originally, only the Islander East Rental Program was a plaintiff in this action. However, approximately three weeks after the original Complaint was filed, an Amended Complaint was filed that included J. Ray Riley as a plaintiff. The defendants filed their answer to the original Complaint apparently before they were served with the Amended Complaint. In their Answer, the defendants asserted claims against Riley, and, because Riley was not a plaintiff in the original Complaint, characterized themselves as Third–Party Plaintiffs and Riley as a Third–Party Defendant. The Court will avoid the confusing titles used by the parties and will simply refer to Riley as a Plaintiff and the defendants collectively as Defendants.

penses of the regime.[2]

Not unexpectedly, the Defendants take a different view of the situation. The Defendants contend that a rental program is mandated by the condominium regime bylaws, and that the IERP and its executive committee, created by the Association in accordance with this mandate, are subject to the authority of the Association and its Board of Directors (Board). According to the Defendants, the Association began using the Islander East servicemark and tradename before the IERP was established, and the IERP used the marks only through the Association's authorization.

The Defendants contend the Board abolished the IERP when Riley and the other members of the IERP executive committee refused to comply with the Board's demands for greater accountability. The Board then hired a professional property manager to run the rental program, to improve the efficiency of the program for the benefit of all homeowners. The Defendants contend that Riley has refused to accept the Board's decision, and that Riley filed this lawsuit without first consulting the IERP Participants.

The Plaintiffs filed this action on July 6, 1995, asserting claims including servicemark and trademark infringement, unfair competition, tortious interference with business relationships, misappropriation of trade secrets, conspiracy, conversion, unjust enrichment, and breach of fiduciary duty. In their counterclaims, the Defendants assert against the Plaintiffs largely the same claims asserted by the Plaintiffs against the Defendants.

During the pendency of this action, pursuant to an order of this Court, neither party is using the name Islander East to market its rental services. Because of the animosity between the parties, the Court was forced to establish elaborate rules governing the use and operation of telephone services and access to rental units. It is against this rancorous backdrop that the Court must consider Riley's Motion to disqualify Fulbright.

## II. Disqualification

Riley's Motion for disqualification is premised on Fulbright's representation of Riley in a divorce proceeding in 1987 and 1988. According to Riley, he disclosed confidential financial information to Fulbright during the course of the divorce proceeding, and these confidences are jeopardized by Fulbright's representation of the Defendants. In support of his motion, Riley points to the Defendants' discovery request for "[r]ecords of all monies paid or transferred by [IERP] from 1977 to the present to any past or present member of the executive committee, to J. Ray Riley or his law firm, or to his past wives or present wife." Riley contends the discovery request establishes that there is a genuine risk that the confidences he revealed to Fulbright will be revealed to the Defendants.

### A.

■ As a preliminary matter, the Court must first consider the waiver argument asserted by the Defendants. According to the Defendants, because Riley did not raise the disqualification issue for four months after being put on notice of the representation, Riley has waived his right to object to Fulbright's representation of the Defendants. The Court disagrees.

While courts have found implied waivers when a motion to disqualify was not timely made, these cases generally involve delays much longer than four months, or motions made on the eve of trial. *See Central Milk Producers Co-op. v. Sentry Food Stores, Inc.,* 573 F.2d 988, 991 (8th Cir.1978) (waiver found where disqualification motion brought more than two years after notice of representation and only one month before the scheduled trial date); *Trust Corp. of Montana v. Piper Aircraft Co.,* 701 F.2d 85, 87 (9th Cir. 1983) (waiver where disqualification not

**2.** The Association required the IERP to pay the Association an amount equal to 50% of the cost of utilities consumed by IERP participants and their personal and rental guests, and certain maintenance costs incurred by the Association during summer months. These requirements did not apply to resident owners or owners who rented their units outside the IERP. The Plaintiffs contend the requirements discriminatorily shifted to the IERP a significant portion of the Association's utility and maintenance costs that should have been borne by all condominium units owners equally through higher annual assessments.

raised for more than two and half years after notice of representation); *Employers Ins. of Wausau v. Albert D. Seeno Constr. Co.*, 692 F.Supp. 1150, 1165–66 (N.D.Cal.1988) (waiver where disqualification motion not made until well over a year after moving party became aware of conflict). Here, the Court concludes the four month period between the initiation of this action and the filing of Riley's motion in no way amounts to an unreasonable delay; thus, Riley has not waived his right to object to Fulbright's representation of the Defendants. *Cf. Atasi Corp. v. Seagate Technology*, 847 F.2d 826, 832 (Fed.Cir. 1988) (where party had notice of the conflict in November 1984 and the proceedings and discovery were stayed from March 1985 through November 1986, disqualification motion filed in November 1986 was timely). Accordingly, the Court will proceed to the merits of Riley's disqualification motion.

## B.

■ Motions to disqualify an attorney are substantive motions determined by standards developed under federal law, *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir.1992), and are governed by the ethical rules announced by the state and national professions in light of the public interest and rights of the litigants. *Id.; In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992), *cert. denied*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).[3] Therefore, in the case at bar, the ABA Model Rules of Professional Conduct (the Model Rules), the ABA Model Code of Professional Conduct (the Model Code), and the Texas Rules of

Professional Conduct (the Texas Rules)[4] are all relevant to the Court's resolution of the disqualification issue. *American Airlines*, 972 F.2d at 610. The party seeking to disqualify an attorney bears the burden of proving that disqualification is warranted. *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1028 (5th Cir. Unit B), *cert. denied*, 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981).

Given the nature and operation of a modern legal practice, an absolute prohibition against an attorney accepting representation against a former client is neither practical nor laudable. However, some limitations are necessary to protect confidential information, to ensure attorneys respect their duty of loyalty to their clients, and to preserve public confidence in the legal system. *See American Airlines*, 972 F.2d at 617–19; *Brennan's Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 172 (5th Cir.1979). Thus, a Court should attempt to apply the rules governing representation adverse to a former client in a manner proscribing representation no more than necessary to further these goals.

■ It is beyond dispute that an attorney is prohibited from accepting representation adverse to a former client if the subject matter of the current representation is substantially related to the subject matter of the former representation. The uncompromising prohibition against representation in substantially related matters is found in the relevant ethical standards,[5] as well as case law predating the promulgation of the Model Code or the Model Rules. *American Air-*

---

3. The Court is particularly mindful of this case, as it, itself, was reversed therein. This Court tries hard to learn from its own mistakes.

4. The Local Rules of the Southern District of Texas provide that the "Code of Professional Responsibility adopted by this Court is the Code of Professional Responsibility of the State Bar of Texas, as amended from time to time." Appendix A, Rule 4. Texas replaced its former Disciplinary Code with the Texas Rules of Professional Conduct in 1990. *See American Airlines*, 972 F.2d at 609.

5. Rule 1.9(a) of the Model Rules and Rule 1.09(a)(3) of the Texas Rules prohibit an attorney from accepting representation materially adverse to a former client "in the same or substantially related matter." Under the Model Code, the

propriety of representation adverse to a former client is generally analyzed under Cannon 4, which requires an attorney to preserve the confidences and secrets of a client, as well as Cannon 9, which provides that a lawyer should avoid even the appearance of impropriety. *See American Airlines*, 972 F.2d at 618; *Duncan*, 646 F.2d at 1027. The same standard is also reflected in the most recent draft of the *Restatement of the Law Governing Lawyers*, which provides that "a lawyer who has represented a client in a matter may not thereafter represent another client with interests materially adverse to the interests of a former client in the same or a substantially related matter." *Restatement (Third) of the Law Governing Lawyers* § 213 (Tent.Draft No. 4, 1991).

*lines,* 972 F.2d at 616–17 (the rule barring representation in substantially related matters was developed at common law and did not rely on the Model Code or the Model Rules). It is also rooted in traditional notions of common sense and fundamental fairness.

The Defendants, however, contend that under *American Airlines,* the *sole* issue in every disqualification determination is whether the subject matter of the present and former representation are substantially related. According to the Defendants, the subject matter of Fulbright's present and former representations are not substantially related as a matter of law; thus, the Court's inquiry is at an end. The Court agrees that, superficially, the subject matter of Fulbright's former representation—Riley's divorce proceeding—does not appear to be substantially related to the subject matter of its current representation—a commercial dispute over a condominium rental program and associated tradenames and servicemarks. However, the Court disagrees with the Defendants' reading of *American Airlines.*

In *American Airlines,* while the party seeking disqualification contended the subject matters of the attorney's former and current representation were substantially related, it did not offer specific confidences that were threatened by the current representation. The party opposing disqualification argued that a substantial relationship could be established only by demonstrating there was a genuine threat that confidences revealed to the attorney by the former client would be divulged to the former client's present adversary. 972 F.2d at 615. The Fifth Circuit rejected this argument, stating that a party establishes a genuine threat of disclosure of confidential information by establishing a substantial relationship between the subject matters of the former and current representations, not the other way around. *Id.* However, the Court did not hold that establishing a substantial relationship between the former and current representations is the only method by which a former client can disqualify his former attorney. To the con-

trary, the *American Airlines* Court explicitly recognized that disqualification may be required even if a substantial relationship is not established.

In pertinent part, Texas Rule 1.09, which governs the propriety of accepting representation adverse to a former client, provides:

(a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:

(2) if the representation in reasonable probability will involve a violation of Rule 1.05; or

(3) if it is the same or a substantially related matter.

*See* Texas Gov't Code Ann. Title 2, Subchapter g, Appendix A, art. 10, § 9, Rule 1.09. Rule 1.05, governing confidential information, is incorporated into Rule 1.09(a)(2), and prohibits, *inter alia,* the use of confidential information of a former client to the disadvantage of the former client after the representation is concluded. Referring to Texas Rule 1.09 and Model Rule 1.9,[6] the court in *American Airlines* stated the Rule

on its face forbids a lawyer to appear against a former client if the current representation in reasonable probability will involve the use of confidential information *or* if the current matter is substantially related to the matters in which the lawyer has represented the former client.

In providing two distinct grounds for disqualification, the Rules expand the protections for former clients beyond those offered by the substantial relationship test. The Rules are not, however, broader than the protections provided by our precedents. While the focus of our cases has been the substantial relationship test, we have indicated that a former client *could also disqualify counsel by showing that his former attorney possessed relevant confidential information in the manner contemplated by Rule 1.09(a)(2).*

---

6. While Model Rule 1.9 and Texas Rule 1.09 are worded somewhat differently, the court found

the rules to be identical "in all important respects." *American Airlines,* 972 F.2d at 615 n. 2.

*American Airlines,* 972 F.2d at 615 (emphasis in second paragraph added) (footnote omitted). Thus, the *American Airlines* Court explicitly acknowledged that establishing a substantial relationship between the attorney's former and current representations is not the only way a former client can disqualify his former attorney, and that disqualification may be warranted if the former attorney possesses relevant confidential information.

Moreover, the Court emphasized that the substantial relationship test serves two underlying concerns: preserving confidential information and upholding the client's interest in the loyalty of his attorney. *American Airlines,* 972 F.2d at 616. These same concerns are served by the provisions of Rule 1.09 and other ethical standards prohibiting representation adverse to a former client when that representation jeopardizes confidential information of the former client. However, under the Defendants' reading of *American Airlines* and their understanding of conflict of interest rules, these concerns are only sometimes important—that is, an attorney's loyalty to his former client is important and the former client's confidential information is worthy of protection only if the attorney proceeds against the former client in a substantially related case. This view simply reads out the portions of the ethical standards barring representation against a former client when confidential information of the former client is jeopardized, and is completely untenable and indefensible.

■ Therefore, a proper reading of *American Airlines* and the ethical standards makes clear that whether Fulbright should be disqualified depends on a determination of whether Riley has established *either* a substantial relationship between the subject matter of Fulbright's former representation of Riley and its current representation of the Defendants, *or* that Fulbright, through its former representation of Riley, possesses relevant confidential information that may be used to Riley's disadvantage. As will be

made clear below, the Court concludes Riley has established that Fulbright's representation of the Defendants jeopardizes confidential information. Thus, the Court need not determine whether a substantial relationship between the representations has also been established.

The Defendants also argue Riley's motion is facially deficient because it does not set forth in sufficient detail the subject matter, issues, and causes of action common to the past and present representations. The Court disagrees.

■ A party seeking disqualification of an attorney based on the attorney's former representation of the party in a substantially related matter must show disqualification to be appropriate through a specific delineation of the "subject matters, issues and causes of action" common to both representations. *American Airlines,* 972 F.2d at 614. In the case at bar, however, disqualification is premised not on a substantial relationship between Fulbright's former and current representations, but on the threat that Fulbright's current representation poses to confidential information disclosed to Fulbright during the course of its former representation of Riley. Thus, it is unnecessary for Riley to specifically delineate the common subject matters, issues, and causes of action. Instead, Riley carries his burden of proof by sufficiently identifying the disclosures made to Fulbright during the course of its former representation and demonstrating that those confidential disclosures are relevant to and jeopardized by Fulbright's current representation.[7]

■ In cases where a substantial relationship between the attorney's former and current representation has been established, an irrebuttable presumption arises that confidential information has been given to the attorney. *E.g., In re Corrugated Container Antitrust Litigation,* 659 F.2d 1341, 1346 (5th Cir. Unit A 1981). Thus, the Court may not even inquire as to whether such disclosures were in fact made or whether

**7.** The Court does not suggest that disqualification motions based on a threat to confidential information are viewed with any less scrutiny than substantial relationship motions. Because of the

rights and issues involved, every disqualification motion requires the careful consideration of the Court and the precise application of precedent to the established facts.

the attorney in fact is likely to use the damaging disclosures to the detriment of his client. The inquiry is limited solely to whether the matters of the present suit are substantially related to matters of the prior representation, and this is because this Court recognizes that in order to aid the frank exchange between attorney and client, it is necessary to preclude even a possibility that information given in confidence by a former client will ever be used without that client's consent.

*Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 252 (5th Cir.1977) (citation omitted). The presumption is not "intended to obviate the need for proof where proof would be difficult. Instead, this presumption is intended to prevent proof that would be improper to make." *In re Corrugated Container*, 659 F.2d at 1346. Because disqualification in this case is not premised on a substantial relationship between Fulbright's former and current representations, the presumption is not squarely applicable. Nonetheless, the concerns underlying the operation of the presumption are completely applicable to the case at bar. To require Riley to present any more detail about the disclosures made to Fulbright would effectively require him to reveal the very confidences he seeks to protect and would require "proof that would be improper to make." Accordingly, the Court concludes that Riley's Motion to Disqualify and supporting affidavit adequately identify the disclosures made to Fulbright during its representation of Riley to allow the Court to determine whether disqualification is warranted.[8]

As discussed above, Texas Rule 1.09(a)(2) requires disqualification if the present representation in reasonable probability will involve a violation of Rule 1.05. Rule 1.05(b)(3) prohibits the use of "confidential information of a former client to the disadvantage of the former client after the representation is con-

cluded unless the former client consents after consultation or the confidential information has become generally known." Thus, disqualification is appropriate if confidences were exchanged during Fulbright's representation of Riley, and those confidences could be used to Riley's disadvantage in this litigation.

In his affidavit in support of his disqualification motion, Riley states that one of the central issues in his divorce proceeding was the "alleged 'secreting and improper wasting' of assets and income, including the existence and dispensation of income from the Islander East Rental Program." Riley Affidavit at 2. In addition, the affidavit establishes that Riley and Fulbright engaged in "substantive conversations regarding [Riley's] Islander East unit, its participation in the Rental Program, [Riley's] relationship with the program, and revenues derived through the program." *Id.*

Clearly, the disclosures Riley made to Fulbright are "confidences" protected by the relevant ethical standards. *See* Model Rule 1.6(a) (requiring attorney to keep confidential "information relating to representation of a client"); Texas Rule 1.05(a) (confidential information includes privileged and unprivileged information; privileged information refers to information protected by the attorney-client privilege, while unprivileged information refers to all other information relating to a client or furnished by the client during the course of or by reason of the representation of the client); Model Code Cannon 4 (requiring attorney to preserve a client's confidences and secrets) and DR 4–101 (defining "confidence" as information protected by the attorney-client privilege, and "secret" as other information learned through the attorney-client relationship "that the client has requested be held inviolate or the disclosure of which would be embarrassing or would likely be detrimental to the client."); *see also Restatement*

---

8. The Defendants argue that Riley lacks standing to object to requests for information about payments to his ex-wife. The Court disagrees. While Riley could not object to the disclosure of confidential information given by his ex-wife to her attorney, he certainly has standing to object to the disclosure of confidential information giv-

en by him to his attorney, even if that information also involved a third party. Moreover, Riley's disqualification motion can be supported by considering the disclosures involving payments to Riley, without considering any payments by the IERP to Riley's ex-wife.

*(Third) of Law Governing Lawyers* § 112(1) (Tent. Draft No. 2 1989) (confidential information is information, other than information that is generally known, if the attorney learns the information during the course of representing the client). Moreover, the amount of money transferred to Riley by the IERP is relevant to many of the Defendants' claims against Riley, including the breach of fiduciary duty claim and the Defendants' demand for an accounting of the IERP's profits. Thus, the information described by Riley in his affidavit is clearly relevant to the case at bar and could be used to Riley's disadvantage at trial.

The Defendants, however, argue that no relevant disclosures were made by Riley during the course of Fulbright's representation of him.[9] The Defendants have presented the Court with an affidavit from Stewart Gagnon, the Fulbright attorney who represented Riley in his divorce. In his affidavit, Mr. Gagnon states that the value of Riley's Islander East unit and the rental income derived from that unit were at issue in the divorce, but that he "recall[s] no other information whatsoever which Mr. Riley disclosed to me which is responsive to the disputed discovery request or relevant to the present action." Mr. Gagnon characterizes the allegations of wasting and secreting of assets in the divorce pleadings as "boilerplate," and contends Riley's handling of marital assets was not an issue in the divorce. Thus, the Defendants contend Riley has established only that funds received from the *rental* of Riley's Islander East unit were at issue in his divorce proceeding, while the Defendants in this action are interested only in funds derived from the *management* of the Rental Program. The Court disagrees.

First, the Court finds Mr. Gagnon's statement that he recalls no other conversations insufficient to overcome Riley's affidavit which clearly establishes that he had substantive discussions with Fulbright about his "relationship with the [IERP] and revenues derived through the [IERP]." The Defendants' discovery request seeks records of all monies paid or transferred by the IERP to any past or present member of the executive committee, including Riley. The Defendants do not seek information about transfers to spouses or former spouses of any member of the executive committee other than Riley. It is certainly unusual for discovery in a commercial dispute to extend to the spouses of those involved in the dispute. However, the fact that the Defendants made such an unusual request regarding Riley only, and no other member of the executive committee, suggests that the Defendants had information leading them to believe the unusual request would be fruitful with regard to Riley. While the Court certainly does not mean to imply that Fulbright has behaved improperly, given the public policy considerations governing the disqualification issue, the Court must concede that the unusual nature of the discovery request raises a question that must be resolved in Riley's favor.

Moreover, even if the Court were to accept Fulbright's statement that it received no information about any funds Riley received in connection with the management of the IERP, disqualification would still be required in this case. The parties agree that Riley disclosed information to Fulbright about the rental income received from Riley's Islander East condominium unit, and Riley has apparently voluntarily turned over to the Defendants records of that rental income.[10] Considering the level of Riley's control over the IERP, there is a reasonable probability that Riley's discussions with Fulbright about his rental income included information that would be relevant to some of the claims raised by the Defendants in this litigation, including their demand for an accounting by the IERP and their claim that Riley breached his fiduciary obligations to the IERP participants and the Association.

---

9. The Defendants do contend, however, and the Court agrees, that the *disposition* of any monies paid to Riley by the IERP is irrelevant to this case.

10. While the affidavit of Mathias Samuel refers to those records as Exhibit B of the affidavit, the rental records are not attached to the affidavit filed with the Court. However, the records would have no impact on the conclusions reached by the Court.

As is made clear in *American Airlines* and other disqualification cases, public policy considerations guide the resolution of questions involving impermissible conflicts of interest between an attorney and his former client. Given the contentious and acrimonious nature of this litigation and the numerous, aggressive claims asserted by the parties, the line between disclosures involving the rental of Riley's Islander East unit through the IERP and disclosures involving Riley's relationship with the IERP is simply too fine. To allow Fulbright to continue to represent the Defendants under the circumstances of this case would violate the ethical standards governing the practice of law, and would raise public suspicion about the integrity of the legal profession.

The Defendants also contend that proceeds from the IERP were not at issue in Riley's divorce because the divorce decree "makes no mention" of any payments by the IERP to Riley or his ex-wife. *See* Defendants' Response to Motion to Disqualify, p. 6. The divorce decree is written in a neutral manner, and includes only the information necessary to terminate the marital relationship and resolve the other issues in the case, including child custody and support, and the distribution of marital property. While the divorce decree does not specifically mention the IERP, the decree does include a finding as to the amount of Riley's income. The Court finds the mere fact that the decree does not mention the IERP to be insufficient to rebut Riley's assertions about his disclosures to Fulbright.

Finally, the Defendants argue disqualification is not required because Riley has represented that he received no monies in connection with his management of the IERP. According to the Defendants, Riley stated at a homeowners' meeting [11] that he received no money in return for his involvement with the IERP. If Riley in fact received no money from the IERP and disclosed to Fulbright that he received no money from the IERP, then it may be that the confidential information possessed by Fulbright could not be used to Riley's disadvantage, and disqualification would not be warranted. *See* Texas Rule 1.05(b)(3) (prohibiting the use of "confidential information of a former client to the disadvantage of the former client...."). While this argument has certain superficial appeal, it nevertheless must fail.

First, the Court simply cannot assume that the Defendants' unsubstantiated account of statements made by Riley at a homeowners meeting accurately reflects the confidential information given to Fulbright during its former representation of Riley. The Court can determine whether the information Fulbright obtained while representing Riley could be used to Riley's disadvantage only by inquiring about the specific disclosures made by Riley. However, it is precisely this type of inquiry into the substance of confidential disclosures that the ethical rules are intended to prevent. To require a client to support his disqualification motion by revealing the very confidences he seeks to protect through his motion would be incompatible with the ethical standards governing the legal profession, and could result in the client giving his attorney less than complete information for fear of later being forced to reveal that information.

Moreover, regardless of the exact content of Riley's disclosures to Fulbright, the information disclosed to Fulbright could be used to impeach Riley, depending on the development of the testimony at trial. For example, if it is established at trial that Riley did receive money in connection with his management of the IERP, his general credibility could be impeached by pointing out that he did not disclose that income during his divorce. Moreover, as discussed above, Fulbright's knowledge of the rental income Riley derived from his condominium is sufficient to require disqualification of Fulbright under the peculiar circumstances of this case. Thus, notwithstanding any statement by Ri-

---

11. The Defendants also contend Riley made this same assertion during a discussion in chambers with the Court. Statements made by any party during the course of the Court's off-the-record exploration of settlement possibilities is inadmis-sible under rule 408 of the Federal Rules of Evidence. Thus, the Court will not consider in connection with this Motion any statements made in chambers by either party.

ley that he received no money from the IERP, there remains a reasonable probability that the confidential information provided to Fulbright could be used to Riley's disadvantage during the course of the case. Accordingly, allowing Fulbright to represent the Defendants in this action will violate Texas Rule 1.05(b)(3) and other relevant ethical standards,[12] thus requiring disqualification.

Riley's disqualification motion presented this Court with a very close question, and the Court fully understands that the Defendants will suffer as a result of the Court's conclusion that disqualification of Fulbright is required. However, to allow Fulbright to proceed against Riley would create an appearance of impropriety and unfairness, particularly in light of the Defendants' discovery request for the very information previously disclosed to Fulbright by Riley. Fulbright's continued representation of the Defendants would thus raise public suspicion of the legal profession generally, and cause the public to question the extent of an attorney's loyalty to his client and whether information given to an attorney is truly confidential. While the Court recognizes the importance of a client's right to representation by the client's chosen attorney, the Court nonetheless concludes that, in this case, "the likelihood of public suspicion or obloquy outweighs the social interest" which would be served by Fulbright's continued representation of the Defendants. *Duncan*, 646 F.2d at 1032. The Court therefore concludes that disqualification of Fulbright is required.[13]

Accordingly, Riley's Motion to Disqualify Fulbright is hereby **GRANTED**. Fulbright is hereby ORDERED to withdraw as counsel for the Defendants, and it is hereby relieved of further obligations in this cause. Defendants are consequently ORDERED to retain replacement counsel within forty-five (45) days of the date of this Order, and such replacement counsel shall file an appearance of record within such period. Upon the expiration of the forty-five (45) day period, the stay of all proceedings in this case previously ordered by this Court is hereby LIFTED, and the parties will then be free to pursue their claims and defenses in any manner consistent with the Court's ruling today.

Orders granting motions to disqualify counsel are not appealable before final judgment, *see Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985); *Gibbs v. Paluk*, 742 F.2d 181 (5th Cir.1984), and it is not the intention of this

---

**12.** As noted above, the Fifth Circuit has concluded that Texas Rule 1.09 and Model Rule 1.9 are identical "in all important respects." *American Airlines*, 972 F.2d at 615 n. 2. Therefore, Fulbright's representation of the Defendants also violates Rule 1.9 of the Model Rules. As to the Model Code, while it does not specifically address conflict of interest concerns involving former clients, it does require an attorney to preserve the confidences of his client and to avoid even the appearance of impropriety. *See* Model Code Cannons 4 and 9. More specifically, the Model Code provides that an attorney "should not use information acquired in the course of representation of a client to the disadvantage of the client." Model Code, EC 4–5. Thus, Fulbright's representation of the Defendants likewise violates the standards of the Model Code. *See also Restatement (Third) of the Law Governing Lawyers* § 213 (Tent.Draft No. 4 1991) (prohibiting representation adverse to a former client in a substantially related matter, and defining substantially related matter to include matters where there is a "substantial risk that representation of the present client will involve the use of confidential information of the former client in violation of § 111 [governing the duty to protect confidential information]").

**13.** While the Fulbright attorney who represented Riley in his divorce is not representing the Defendants in this case, the disqualification of the original attorney is imputed to the firm, thus requiring the disqualification of the entire Fulbright firm. *See* Texas Rule 1.09(b) (subject to certain exceptions not applicable to the case at bar, "when lawyers are or have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a)"); Model Rule 1.10(a) ("[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2."); Model Code DR 5–105(D) ("[i]f a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment.") The Defendants do not contend that disqualification of Riley's original attorney should not be imputed to the entire Fulbright firm.

Court to certify this issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). To the extent that mandamus relief may be available, *see American Airlines*, 972 F.2d at 608–09, the parties are free to seek such relief should they consider it appropriate. However, this Court does not intend to revisit the disqualification issue, and the parties are ORDERED to file no further pleadings on this issue before this Court. All further relief on this issue shall be sought from the United States Court of Appeals for the Fifth Circuit as may be appropriate in due course.

IT IS SO ORDERED.