**CITY OF EL PASO**

v.

**Carlos SALAS–PORRAS SOULE a/k/a Carlos Salas–Porras S.; Carlos Salas–Porras Romero a/k/a Carlos Salas–Porras R.; Virginia Salas–Porras De Cano; Aurora Salas–Porras Romero; Elvira Salas–Porras De Lugo; Patricia Medrano Hernandez; Esther Salas–Porras; Rukubi S.A. De C.V.; New World Trading Co. a/k/a New World Trading Co. Ltd.; Waks Development Corp.; and Parallax Corporation N.V. a/k/a Parallax N.V.**

No. EP–97–CA–458–DB.

United States District Court,
W.D. Texas,
El Paso Division.

May 12, 1998.

**618**

Carlos Villa, El Paso, TX, Harrell Davis, El Paso, TX, for Plaintiff.

James R. Dennis, El Paso, TX, Mark D. Taylor, Dallas, TX, T.O. Gilstrap, EL Paso, TX, for Defendants.

*MEMORANDUM OPINION AND ORDER*

BRIONES, District Judge.

On this day, the Court considered Defendants' Motion to Disqualify filed on March 19, 1998, in the above-captioned cause. Counsel for the City of El Paso ("City"), the firm of Krafsur, Gordon, Mott, Davis & Woody, P.C. ("KGM"), filed its Response on March 26, 1998. The Court held an evidentiary hearing on the matter on April 3 and 7, 1998. Thereafter, the Court allowed the Parties to file post-hearing briefs. Defendants filed their post-hearing brief on April 13, 1998. KGM and the City filed their Post-hearing Response Briefs on April 20, 1998.[1] Defendants then filed their Reply Brief on April 27, 1998. After due consideration, the Court is of the opinion that the Motion should be granted.

**Background**

Briefly, in the underlying cause the City is seeking to collect on a final judgment rendered in its favor against Parallax Corporation N.V., a/k/a Parallax N.V. ("Parallax"), in a Texas state court condemnation proceeding regarding a piece of real estate ("condemned land") in the City. Through its Complaint, the City is attempting to recover certain funds that were held in the registry of the County Court at Law, El Paso County, Texas ("state court"), in connection with the condemnation proceedings ("condemnation proceedings"), and other funds of Parallax. These funds allegedly were transferred to Defendants during the pendency of state court litigation. The City relies on several legal theories for the basis of its claims, including fraudulent transfer, civil conspiracy, fraud, conversion, and alter ego.[2]

Defendants filed the instant Motion because of an alleged conflict of interest between KGM and at least three Defendants in this cause. Specifically, Defendants Carlos Salas–Porras S. ("Salas–Porras Jr."), Carlos Salas–Porras R. ("Salas–Porras Sr."), and

---

1. The Court notes that it intended to allow KGM and/or the City to file only one post-hearing response brief in total. As such, Defendants filed a Motion to Strike KGM's Post-hearing Response Brief on April 23, 1998. The Court denied the Motion to Strike. In the end, the Court finds the filing of the two Response Briefs was not prejudicial to Defendants in any way.

2. The City originally filed this cause on September 30, 1997, in the 327th District Court of El Paso, County, Texas, cause number 97–3268. By Notice of Removal filed on October 30, 1997, Defendants removed the cause to this Court on diversity grounds.

Parallax, Defendants assert, have been represented by KGM and/or attorneys currently employed by KGM. The City and KGM insists there is no conflict. KGM argues that there was no attorney-client relationship between it and the subject Defendants, that the alleged prior representation did not involve substantially related matters, that no confidential information was revealed, and that the instant Motion is untimely. The Court finds the parties established the following facts during the evidentiary hearing and through duly admitted and verified exhibits.

### Facts

In the 1970's, the El Paso firm of Mayfield & Perrenot ("Mayfield & Perrenot") began its representation of Salas–Porras Jr., Salas–Porras Sr., and several corporate entities owned by the Salas–Porras family. This representation included the formation of many of the Salas–Porras family corporate entities.

In 1986, Andrew Krafsur ("Krafsur") joined Mayfield & Perrenot as an attorney. He worked at Mayfield & Perrenot until 1994. During Krafsur's tenure at Mayfield & Perrenot, the firm represented several of the Salas–Porras family corporate entities.

Burges Perrenot, one of Mayfield & Perrenot's founding partners, was a close advisor to Carlos Salas–Porras Jr., Carlos Salas–Porras Sr., and at least some of the Salas–Porras family corporate entities during Krafsur's employment at Mayfield & Perrenot.

Krafsur left Mayfield & Perrenot in 1994 and formed KGM. Pat Gordon ("Gordon"), another KGM attorney, provided tax advice to Parallax by way of another law firm, Delgado & Acosta ("D & A"). D & A also formerly represented Parallax. D & A consulted with Gordon regarding tax issues which would arise in the course of its representation of Parallax. Exactly under what circumstances and when Gordon first began to do work for Parallax through D & A is not apparent from the record. D & A billing statements, which were admitted into evidence during the evidentiary hearing, contain several entries referring to work done by Gordon, either indirectly or directly, for Parallax.[3] Several KGM billing statements addressed to D & A also contain entries mentioning work done by KGM attorneys for Parallax and other corporate entities owned by the Salas–Porras family.[4]

3. The D & A billing statement dated October 18, 1994, and addressed to Vistula/Omega Corp., N.V., to the attention of Salas–Porras Jr., contains the following entries: entry dated September 8, 1994, stating "telephone call with Pat Gordon," and entry dated September 14, 1994, stating "[m]eeting with Pat Gordon; discussed the law research made and correlated to the analysis made." The billing statement dated September 22, 1994, and addressed to Vistula/Omega Corp., N.V., to the attention of Salas–Porras Jr., contains the following entries: entry dated August 23, 1994, stating "[c]onference with H. Delgado and P. Gordon to determine what courses of action can be better pursued; discussed tax research"; entry dated August 25, 1994, stating "[m]eeting with Attorney Pat Gordon to discuss applicable courses of action and certain research that was made pertaining to [Omega, Vistula, and Parallax]"; and entry dated August 29, 1994, stating "telephone call with Pat Gordon." The billing statement dated December 15, 1994, and addressed to Parallax, to the attention to Salas–Porras Jr., contains the following entry: entry dated November 8, 1994, stating "meeting with H. Delgado and telephone conference with Pat Gordon to discuss IRS agent's position and application of treaty benefits." The billing statement dated September 22, 1994, and addressed to Parallax, to the attention of Salas–Porras Jr., contains the following entries: entry

dated August 23, 1994, stating "[c]onference with H. Delgado and P. Gordon to determine what courses of action can be better pursued; discussed tax research"; entry dated August 25, 1994, stating "meeting with Attorney Pat Gordon to discuss applicable courses of action and certain research ... made pertaining to [Parallax, Omega, and Vistula]"; and entry dated August 29, 1998, stating "telephone call with Pat Gordon." The billing statement dated October 18, 1994, and addressed to Parallax, to the attention of Salas–Porras Jr., contains the following entries: entry dated September 9, 1994, stating "[m]eeting with P. Gordon regarding new law researched on elections made on return and reviewed capitalization costs issue"; and entry dated September 12, 1994, stating "[m]eeting with Pat Gordon; discussed last IRS examination report; analyzed and copied pertinent documents." And the billing statement dated March 10, 1995, and addressed to Parallax, to the attention of Salas–Porras Jr ., contains an entry dated February 8, 1995, stating "[t]elephone conference with Pat Gordon to discuss second judgment on the condemned land v. IRS position to the original proceeds."

4. Defendants introduced five KGM billing statements addressed to D & A containing the name, "Carlos Salas–Porras," just above the statement, "FOR PROFESSIONAL SERVICES REN-

In February 1996, the City contacted Harrell Davis ("Davis"), a KGM partner, and asked him if KGM would be willing to undertake post-judgment work related to the condemnation proceedings. The work was to involve post-judgment discovery for the purpose of collecting the deficiency judgment rendered against Parallax in *City of El Paso v. Parallax Corporation, N.V.*, County Court at Law Number Four, Case No. 91–5809. As part of KGM's routine conflicts check, Davis sent a memorandum ("conflicts memo") to the other KGM attorneys informing them of KGM's potential representation of the City, and asking that he be informed of any conflict of interest which might arise out of the representation. Krafsur responded to the conflicts memo by telling Davis that he knew Salas–Porras Jr. Gordon did not respond to the memo.

KGM attorneys Krafsur and Davis met with Carlos Salas–Porras Jr. in February 1996 at KGM offices. The meeting concerned the firm's possible representation of the City in the post-judgment proceedings and any potential conflict in interest. Krafsur and Davis asked Salas–Porras Jr. to sign a letter waiving conflicts of interest arising out of KGM's representation of the City in Case No. 91–5809.[5] After consulting with independent counsel, Salas–Porras Jr. agreed to sign the letter ("waiver letter"). The waiver letter, dated March 7, 1996, and addressed to Salas–Porras Jr., provides in relevant part as follows:

> While [KGM] has not represented either Parallax or New World, and has not obtained any information regarding their dispute with the City of El Paso, due to our personal relationship and the fact we have represented and continue to represent you

and other entities you own or control, we do not believe it appropriate to undertake the City's representation without a waiver of any potential conflict of interest.

> After discussions with us and consultation with your counsel ... you have agreed that any conflict of interest involving you, Parallax or New World will be affirmatively waived, and this firm may undertake the representation of the City of El Paso. This waiver will in no event constitute a waiver of the attorney-client privilege on any matters in which we have undertaken your representation.

Salas–Porras Jr. endorsed the terms of the waiver on behalf of Parallax, New World, and himself individually.

Sometime in October or November 1997, a letter was sent on behalf of Salas–Porras Jr. to KGM advising the firm to withdraw because of a conflict. Despite the exchange of several letters, KGM was never informed of any factual basis for the conflict.

## DISCUSSION

■] Motions to disqualify an attorney are substantive motions resolved under federal law standards, *In re Dresser Indus., Inc.,* 972 F.2d 540, 543 (5th Cir.1992), and governed by the ethical rules in the state and national professions in light of the public interest and rights of the litigants. *Id.*; *In re American Airlines, Inc.,* 972 F.2d 605, 610 (5th Cir. 1992). As such, the ABA Model Rules of Professional Conduct (Model Rules), the ABA Model Code of Professional Responsibility (Model Code), and the Texas Rules of Professional Conduct (Texas Rules) are relevant to the Court's resolution of the disqualification issue. *See American Airlines,* 972

DERED," each dated September 8, October 13, November 3, December 6, 1994, and April 10, 1995. The billing statement dated October 13, 1994, additionally contains the following entries: entry dated September 9, 1994, stating that "ASOT" (an attorney with KGM) had a "[m]eeting with George Gilbert [of D & A] for status of [IRS] audits involving Vistula, Omega, and Parallax; planning session for action in connection with the same audits"; entry dated September 9, 1994, stating that Gordon had a "[c]onference with George Gilbert; conference with Alfonso Soto; work on tax cases"; entry dated September 14, 1994, stating that Gordon had a

"[l]engthy conference with George Gilbert and Hector Delgado [of D & A] on business and tax issues"; and entry dated September 19, 1994, stating "ASOT" had a "[m]eeting with George Gilbert to discuss status of IRS audits for Vistula, Omega, and Parallax; draft memorandum."

5. There is some dispute over what was discussed during the meeting. Salas–Porras Jr. testified that he told Krafsur about Parallax's distribution of its funds to creditors. Krafsur denies this. The Court does not credit Salas–Porras' testimony in this regard.

F.2d at 610; *Islander East Rental Program v. Ferguson,* 917 F.Supp. 504, 508 (S.D.Tex. 1996).[6]

■ In the Fifth Circuit, the applicable test for disqualification of attorneys is articulated in *American Airlines.* To disqualify an attorney or firm under the *American Airlines* test, a moving party must show: "1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and 2) a substantial relationship between the subject matter of the former and present representations." 972 F.2d at 614 (citations and quotations omitted); *see also* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon Supp.1998). The test is not to be applied in a "mechanical" way such that an attorney can never represent an interest adverse to a former client. *American Airlines,* 972 F.2d at 614; *Duncan v. Merrill Lynch, Pierce, Fenner & Smith,* 646 F.2d 1020, 1027–28 (5th Cir.1981).

Additionally, Texas Rule 1.09 provides in pertinent part:

  (a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a manner adverse to the former client:

  \*     \*     \*     \*     \*     \*

  (2) if the representation in reasonable probability will involve a violation of Rule 1.05 [dealing with confidential information]; or

  (3) if it is the same or a substantially related matter.

Texas Rule 1.09(2) thus incorporates Texas Rule 1.05(b)(3) which prohibits a lawyer's use of confidential information obtained from a former client to that former client's disadvantage. *American Airlines,* 972 F.2d at 615. Texas Rule 1.09 therefore explicitly prohibits a lawyer from appearing against a former client if the representation "in reasonable probability will involve the use of confidential information *or* if the current matter is substantially related to the matters in which the lawyer has represented the former client." *Id.* Model Rule 1.9 is identical to Texas Rule 1.09 in all important respects. *Id.* n. 2.

### Timeliness of Motion

As a preliminary matter, the Court addresses the waiver argument raised by the City. The City asserts Defendants waived their right to contest KGM's presence in the suit, because the instant Motion was not timely filed. KGM argues that the Motion should have been filed soon after the firm first engaged in post-judgment discovery in May 1996. The Court disagrees.

■ Although courts have found implied waivers when a motion to disqualify was not timely made, these cases generally involve delays ranging from one to over two years motions to disqualify made after substantial preparation of the case had been completed, or motions made on the eve of trial. *See Central Milk Producers Co-op. v. Sentry Food Stores, Inc.,* 573 F.2d 988, 992 (8th Cir.1978) (waiver found where disqualification motion brought more than two years after notice of representation and after substantial preparation of case); *Trust Corp. of Montana v. Piper Aircraft Corp.,* 701 F.2d 85, 87–88 (9th Cir.1983) (waiver where disqualification not raised for more than two and half years after notice of representation and just prior to trial); *Employers Ins. of Wausau v. Albert D. Seeno Constr. Co.,* 692 F.Supp. 1150, 1165–66 (N.D.Cal.1988) (waiver where disqualification motion not made until well over a year after moving party became aware of conflict). Here, Defendants did not raise the conflict issue until October or November of 1997, presumably when they first became aware of the potential conflict (and in

---

**6.** Local Rule AT-4 of the United States District Court for the Western District of Texas indicates that members of the bar of this Court must comply with the standards of professional conduct required by members of the State Bar of Texas and contained in the Texas Disciplinary Rules of Professional Conduct, V.T.C.A. Government Code, Title 2, Subtitle G–Appendix and the decisions of any court applicable thereto, which are hereby adopted as standards of professional conduct of this Court. This specification shall not be interpreted to be exhaustive of the standards of professional conduct. In that connection, the Code of Professional Responsibility of the American Bar Association shall be noted.

spite of the waiver letter of March 1996) and shortly after the City filed the lawsuit in state court in September 1997. The instant Motion was filed in March 1998, just after Defendants filed their answers. The Court concludes the period of time from October 1997 to March 1998 does not constitute an unreasonable delay. Thus Defendants have not waived their right to object to KGM's representation of the City. *Cf. Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d at 87–88 (waiver where disqualification not raised for more than two and half years after notice of representation and just prior to trial). Having found no waiver, the Court will proceed to the merits of Defendants' disqualification motion.

### Attorney–Client Relationship

■■■ To disqualify opposing counsel on the grounds of former representation, the moving party must first show that an "actual attorney-client relationship" existed between the moving party and the attorney sought to be disqualified. *American Airlines*, 972 F.2d at 614; TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09. An attorney and a client can create an attorney-client relationship either explicitly or implicitly by conduct manifesting an intention to create the attorney-client relationship. *Nolan v. Foreman*, 665 F.2d 738, 739 n. 3 (5th Cir.1982); *Kotzur v. Kelly*, 791 S.W.2d 254, 257 (Tex.App.—Corpus Christi 1990, no writ); *Parker v. Carnahan*, 772 S.W.2d 151, 156 (Tex.App.—Texarkana 1989, writ denied). It "is usually not a difficult matter for the client to establish" an attorney-client relationship. *Parker*, 772 S.W.2d at 156,

■■■ Here, Defendants argue that there was an implicitly created attorney-client relationship between Gordon and Salas–Porras Jr. and Parallax.[7] As proof, Defendants cite to numerous D & A billing statements ad-dressed to Parallax and other companies, all to the attention of Salas–Porras Jr., with most statements containing specific references to Parallax tax matters handled by Gordon. Defendants also cite to several KGM billing statements addressed to D & A containing the name, "Carlos Salas–Porras," and one statement in particular that references specifically Parallax tax matters. For its part, KGM insists that Defendants did not produce competent evidence that Gordon ever had an "actual" or "personal" attorney-client relationship with Salas–Porras Jr. or Parallax. For support, KGM points to Gordon's testimony that he never sent a bill to Parallax, he never met with Salas–Porras Jr. or other officers of Parallax regarding tax matters, and he was never paid for his research services for D & A. KGM also contends that any work done by Gordon was for the benefit of other Salas–Porras family corporate entities such as Vistula and Omega, and that any side discussion regarding Parallax is insufficient to create an "actual" attorney-client relationship between Gordon and Parallax. KGM additionally notes that Salas–Porras Jr. admitted that he had never met Gordon and had no personal knowledge of Gordon's alleged representation of Parallax in tax matters.

Here, although it is not clear exactly when or under what circumstances Gordon's representation of Parallax first began, numerous billing statements clearly show an attorney-client relationship between Gordon and Parallax.[8] This is apparent on the face of D & A billing statements received by Salas–Porras Jr. on behalf of Parallax. While it may be true that Gordon did not personally bill Parallax, meet with representatives of the company, or receive payment for his services, the relevant D & A billing statements are replete with specific references to tax research, conferences, and planning sessions in which Gordon was engaged on Parallax's behalf. *Com-*

---

7. Defendants also asserted that Krafsur represented Salas–Porras Jr. and Parallax, relying on the testimony of Salas–Porras Jr. However, the Court does not find Salas–Porras Jr.'s testimony credible in this regard. Although Krafsur admitted that he gave bankruptcy advice to Salas–Porras Jr. in a brief conversation that lasted about two minutes, Krafsur did not know until much later that the hypothetical issue he dis-cussed with Salas–Porras Jr. pertained to Parallax. This brief conversation in and of itself also is not enough to establish an attorney client-relationship.

8. Defendants also allege that Gordon represented Salas–Porras Jr. personally. The evidence, however, does not support this allegation.

pare *Perez v. Kirk & Carrigan,* 822 S.W.2d 261, 265 (Tex.App.—Corpus Christi 1991, writ denied) (attorney-client relationship does not depend on the payment of a fee) *and Prigmore v. Hardware Mut. Ins. Co. of Minnesota,* 225 S.W.2d 897, 899 (Tex.Civ. App.—Amarillo 1949, no writ) (same) *with Parker,* 772 S.W.2d at 156 (although attorney-client relationship may depend in part on agreement over compensation, the relationship also can be implied by the parties' conduct). Moreover, relevant D & A billing statements show Gordon did work indirectly and directly for Parallax over the course of some six months. The billing statements also reveal that Gordon became increasingly involved with Parallax tax matters with time. Likewise, one KGM billing statement in particular, addressed to D & A and dated October 13, 1994, contains two specific references to tax work done for Parallax by Gordon and another KGM attorney.

Certainly, Parallax, through Salas–Porras Jr., was satisfied with its representation by D & A; otherwise, it would not have continued the relationship. And Salas–Porras Jr. was made aware of the fact that, through D & A, Gordon was intimately involved with Parallax tax matters: D & A billing statements sent to Salas–Porras Jr. clearly show that Gordon was an active participant in Parallax's representation for several months. In this sense, Salas–Porras Jr. did not have personal knowledge *per se* of Gordon representing Parallax because Salas–Porras. Jr. was made aware of this through several month's worth of billing statements—again, statements that consistently referred to work performed by Gordon. The Court thus agrees with Defendants and finds that the numerous billing statements submitted for the Court's review convincingly show implicitly an intent to enter into, and show explicitly an on-going, attorney-client relationship, as between Gordon and at least Parallax.

### Substantial Relationship Between Legal Matters

■ Having found that Defendants have met the first prong of the *American Airlines* test, the Court now turns to the second prong. Under the second prong, the movant must show that there is a substantial rela-

tionship between the subject matters of the former and present representations of the client. *American Airlines,* 972 F.2d at 614. The moving party has the burden to delineate "with specificity the subject matter, issues, and causes of action common to prior and current representations," requiring a court to undergo a "painstaking analysis of the facts and precise application of precedent." *Id.* (quotations and citations omitted). The movant bears the burden of proving that the present and prior representations are substantially related. *Id.; Duncan,* 646 F.2d at 1028. At the same time, however, the party seeking disqualification is not required to point to specific confidences revealed to his former attorney that are relevant to the pending case. *Duncan,* 646 F.2d at 1028. Once the movant proves that the matters are substantially related, the court will irrebuttably presume that relevant confidential information was disclosed during the former representation. *American Airlines,* 972 F.2d at 614; *Duncan,* 646 F.2d at 1028. To be clear, "the substantial relationship test serves not only to ensure the fairness of particular trials, but also to safeguard the integrity of the attorney-client relationship." *American Airlines,* 972 F.2d at 619.

Defendants argue that the tax consultations between Gordon and Parallax are evidence of the substantial relationship between the issues in the instant lawsuit and the advice Gordon gave Parallax in the past. KGM, on the other hand, contends that Defendants have neither produced competent evidence of a substantial relationship nor met their burden of showing evidence specific enough to establish the second prong. Again, the Court finds for Defendants.

■ The Court having recently ruled on a personal jurisdiction motion in this cause, is very familiar with the nature and scope of the City's efforts to recoup funds allegedly fraudulently transferred out of Parallax and into numerous accounts controlled by the Salas–Porras family. Every facet of the financial affairs of Parallax clearly will be explored by the City through discovery, including tax matters. While working for KGM, Gordon consulted with D & A and gave advice to Parallax (via D & A)

concerning tax matters and, at least on one instance, tax matters with regard to the condemned land that is central to the underlying cause. Defendants argue with merit that Parallax relied on Gordon's advice. It would be patently unfair to allow the same lawyer to represent interests adverse to a former client regarding the same business affairs, especially in light of the theories for recovery in, and the nature of, the underlying suit. Certainly, tax matters concerning Parallax are substantially related to the focus of this cause. What is more, Defendants did not provide more specific evidence and produced redacted documents because Defendants were concerned about revealing confidential information that might compromise their position in this case. Thus, the Court finds that Defendants have met both prongs of the *American Airlines* test and concludes that disqualification of KGM is proper.

### Confidential Information

The *American Airlines* court recognized that establishing a substantial relationship between the attorney's former and current representations is not the only way a former client can disqualify his former attorney; disqualification may be warranted if the former attorney possesses relevant confidential information. 972 F.2d at 615; *see Islander East Rental Program,* 917 F.Supp. at 510. *American Airlines* emphasizes that the substantial relationship test preserves confidential information and upholds the client's interest in the loyalty of his attorney. 972 F.2d at 616. These concerns also are served by the terms of Texas Rule 1.09 and other

ethical standards forbidding representation adverse to a former client when that representation jeopardizes confidential information of the former client. Thus, *American Airlines* and ethical standards make clear that whether KGM should be disqualified also can depend on a determination of whether Defendants have established that KGM, through its former representation of Parallax, possesses relevant confidential information that in reasonable probability will be used to Parallax's disadvantage. *See* 972 F.2d at 615.

■ In the cause at hand, even if the Court had found that the legal advice rendered by Gordon was not substantially related to the current cause, the Court nonetheless finds there is a reasonable probability that confidential information related to the administering of the advice could be used to Defendants' disadvantage in this litigation. *See Islander East Rental Program,* 917 F.Supp. at 511. Discovery requests by the City are broad, covering every conceivable aspect of Parallax's financial assets and dealings.[9] Information obtained by Gordon during the preparation of tax advice for Parallax could be used to impeach Defendants' testimony regarding their financial status. The unique circumstances of this cause also could present a situation where financial ties between and among Defendants could be linked through confidences revealed during the course of Gordon's preparation of the tax advice. Although Gordon testified in rebuttal that he and KGM were not privy to confidential information, the Court finds this testimony dubious, especially in light of the numerous references to tax research matters

---

9. For instance, in the City of El Paso's First Set of Post–Judgment Interrogatories and Requests for Production filed on May 24, 1996, the City defines "Parallax" as meaning "Parallax Corporation, N.V., and all of its past or present officers, directors, managing directors, shareholders, employees, agents, and successors...." "Transfer" or "transferred" is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or·parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." The definition for "document" is broad, encompassing "public and governmental filings, financial statements, opinions, and other writings ..." The interrogatories themselves are also broad in

scope and time, for instance: "*Interrogatory No. 8:* Describe all depository accounts or accounts with any financial institution, broker, or similar institution (wherever located) that are or have been owned, maintained, or upon which Parallax (or any officer, agent, director, or employee) was a signatory, at any time within the last 6 years...." Document requests are similarly expansive: "3. All financial statements, profit and loss statements, balance sheets, general ledgers, general journals, and other statements evidencing the assets, liabilities, or operations of Parallax.... 4. All federal, state, and foreign tax returns, as they may have been amended, filed by or on behalf of Parallax, and all work papers and memoranda related thereto."

made in the billing statements. In short, allowing KGM to represent the City will violate Texas Rule 1.05(b)(3) and other relevant ethical standards.[10] Because of Gordon's prior representation of Parallax, the Court concludes his firm, KGM, should be disqualified from representing the City. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09(b) (subject to certain exceptions not applicable here, "when lawyers are or have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a)"); Model Rule 1.10(a) ("[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2."); Model Code DR 5–105(D) ("[i]f a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment.").

### Waiver Letter

■ In spite of Defendants' arguments to the contrary, the waiver letter alone does not conclusively show that there was an attorney-client relationship between Salas–Porras Jr. and Parallax and KGM. First, Salas–Porras Jr. admitted that he personally was never a client of an attorney of KGM, thereby contradicting Krafsur's admission in the letter that he and KGM "have represented and continue to represent" Salas–Porras Jr. Further, the waiver letter explicitly states that KGM has not represented Parallax. Similarly, the fact that the letter asserts KGM does not represent Parallax does not make it so. As explained earlier, the contention in the waiver letter that KGM does not represent Parallax

is inconsistent with evidence and testimony showing that Gordon, a KGM attorney, has represented Parallax in the past.

■ On the other hand, the Court does merit Salas–Porras Jr.'s testimony that he would not have endorsed the waiver letter had he known that he personally, members of his family, and corporations associated with the Salas–Porras family would be targeted by the City in this cause. The Court does not accept that a sophisticated businessman such as Salas–Porras Jr. would knowingly and willingly do such a thing. Had Salas–Porras Jr. been fully aware of the scope of the pending litigation, the Court does not believe he would have acquiesced. The Court thus finds the waiver letter invalid.

■ To be sure, the instant Motion poses a very close question. The City undoubtedly will endure a setback because of today's disqualification of KGM. However, to allow KGM to represent the City in its efforts to collect from Defendants would create an appearance of impropriety and unfairness. In turn, this would raise public suspicion of the legal profession, cause the public to question the degree of an attorney's loyalty to clients, and invite skepticism as to the confidentiality of information given to an attorney. The Court appreciates a client's right to be represented by an attorney of their choice; however, under the circumstances of this case, the Court concludes that " 'the likelihood of public suspicion or obloquy outweighs the social interest' " served by KGM's continued representation of the City. *Duncan*, 646 F.2d at 1032 (quoting *Woods v. Covington County Bank*, 537 F.2d 804, 812 and 813 n. 12 (5th Cir.1976)); *see Islander East Rental Program*, 917 F.Supp. at 514. The Court thus

---

10. Because the Fifth Circuit has concluded that Texas Rule 1.09 and Model Rule 1.9 are similar "in all important respects," *American Airlines*, 972 F.2d at 615 n. 2, KGM's representation of the City also violates Rule 1.9 of the Model Rules. *See Islander East Rental Program*, 917 F.Supp. at 514 n. 12. Although the Model Code does not specifically address conflict of interest concerns involving former clients, it does require an attorney to preserve the confidences of his client and to avoid even the appearance of impropriety.

*See* Model Code Canons 4 and 9 respectively; *Islander East Rental Program*, 917 F.Supp. at 514 n. 12. In particular, the Model Code indicates that an attorney "should not use information acquired in the course of representation of a client to the disadvantage of the client ...." Model Code, EC 4–5. KGM's representation of the City therefore also violates the standards of the Model Code. *See Islander East Rental Program*, 917 F.Supp. at 514 n. 12.

finds that KGM should be disqualified from representing the City in this cause.[11]

Accordingly, **IT IS HEREBY ORDERED** that Defendants Motion to Disqualify is **GRANTED**.

**IT IS FURTHER ORDERED** that the law firm of Krafsur, Gordon, Mott, Davis & Woody, P.C., shall withdraw as counsel for the City of El Paso and is hereby relieved of further obligations in this cause.

**IT IS FURTHER ORDERED** that the City shall retain replacement counsel and such replacement counsel shall file an appearance of record on or before June 12, 1998.

**IT IS FURTHER ORDERED** that all proceedings in this cause shall be stayed until June 12, 1998, at which time the parties will be free to pursue their claims and defenses in any manner consistent with the instant Order.

**IT IS FINALLY ORDERED** that the Joint Stipulation Regarding ADR and Extension of Discovery and Disclosure Deadlines, approved by the Court on March 16, 1998, shall be amended as follows:

1. The deadline for all Defendants to respond to Plaintiff's First Request for Admission, First Set of Interrogatories, and First Request for Production, dated February 13, 1998, shall be set upon the Court's ruling on Plaintiff's Motion to Compel Discovery filed on April 27, 1998.

2. The deadline for Plaintiff to respond to any written discovery that may be issued by any of the Defendants to Plaintiff shall be the later of 30 days after Plaintiff's receipt of any such written discovery requests or July 13, 1998

3. The deadline for the parties to file motions to amend or supplement pleadings, join additional parties, and for Plaintiff to designate potential witnesses, testifying experts, and proposed trial exhibits, and a written summary of the expected testimony of each expert, shall be extended until August 2, 1998. Defendants shall make the same designations within 30 days after Plaintiff's disclosure.

4. All discovery shall be completed on or before September 14, 1998.

5. All dispositive motions shall be filed on or before September 30, 1998.

6. Trial of this cause is reset for the week of October 26, 1998.

7. All other remaining deadlines contained in the Scheduling Order entered on February 3, 1998, shall be dictated by the new trial date.

---

11. Orders granting motions to disqualify counsel are not appealable before final judgment. *See Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 440, 105 S.Ct. 2757, 2766, 86 L.Ed.2d 340 (1985); *Gibbs v. Paluk,* 742 F.2d 181, 185 (5th Cir.1984). The Court will not certify this issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). To the extent that mandamus relief may be available, *see American Airlines,* 972 F.2d at 608–09, the parties may pursue such relief if they so choose. However, the Court will not return to the disqualification issue absent good cause. Otherwise, the Fifth Circuit Court of Appeals is the proper forum for further relief on this issue.