Petition for Writ of Mandamus Denied and Opinion filed May 29, 2008








Petition for
Writ of Mandamus Denied and
Opinion filed May 29, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00666-CV

____________

 

IN RE HOAR CONSTRUCTION, L.L.C.;
LANDRY=S MANAGEMENT, L.P.; LANDRY=S RESTAURANTS, INC.; HOSPITALITY
HEADQUARTERS, INC.; AND ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Relators

 



 

ORIGINAL PROCEEDING

WRIT OF MANDAMUS

 



 

O P I N I O N

In this original proceeding, relators seek mandamus relief
from an order disqualifying their counsel of record from representing them in
the trial court.  We conclude that the trial court did not abuse its discretion
when it disqualified the lawyers pursuant to Rule 1.09(a)(2) of the Texas
Disciplinary Rules of Professional Conduct because a reasonable probability
exists that confidential information will be revealed.  We also conclude that
the real party in interest, First Victoria National Bank, did not waive its
right to seek disqualification.  For these reasons, we deny relators= petition for writ
of mandamus.








Underlying Facts and Procedural History

The underlying dispute arises out of the construction in
downtown Houston, Texas of a hotel named the Inn at the Ballpark (Athe Project@).  When the
dispute began, none of the parties to this mandamus proceeding were part of the
suit.  A materials vendor for the Project, Mason=s Mill &
Lumber Co., sued a subcontractor on the Project,  A&M Casework, Inc.  Mason=s Mill sued
A&M for payment due under their materials supply contract;  Mason=s Mill also sued
A&M=s owner, Lloyd
Lewis (Athe Construction
Litigation@).  

The current parties became involved in the Construction
Litigation when A&M filed a third-party claim for breach of contract
against Hoar Construction, L.L.C., the general contractor for the Project. 
A&M also sued Landry=s Management, L.P. and Landry=s Restaurants,
Inc. (collectively ALandry=s), owners of the
Project, for quantum meruit and foreclosure of a mechanic=s lien.  Hoar
Construction=s longstanding litigation counsel, Cokinos, Bosien
& Young, L.L.P. (ACBY@), appeared for
the third-party defendants on December 14, 2004. 








While the Construction Litigation was in this posture,
A&M defaulted on a number of its obligations, including two promissory
notes owned by First Victoria National Bank and guaranteed by A&M=s owner, Lewis. 
In May of 2005, First Victoria hired a CBY lawyer to assist in its collection
efforts.  First Victoria sued A&M and pursued an adversary proceeding in
Lewis=s personal
bankruptcy (Athe Collection Litigation@).  In the
adversary proceeding, First Victoria alleged that Lewis=s guaranty
indebtedness was nondischargeable because Lewis fraudulently (1) misrepresented
his and A&M=s financial status to obtain the loans and
(2) diverted a portion of the loaned funds to his personal use.  In July 2006,
as a result of CBY Collection Counsel=s efforts in the
Collection Litigation, A&M assigned to First Victoria certain accounts
receivable and rights to payment, including any payment accruing from its third
party claims in the Construction Litigation.  In exchange, First Victoria agreed
to dismiss the adversary proceeding in the Lewis bankruptcy.   CBY Collection
Counsel=s  last tasks for
First Victoria in connection with the Collection Litigation were negotiating
and documenting the assignment and terminating the adversary proceeding.

Six months later, in January of 2007, Hoar Construction and
Landry=s (hereinafter
collectively Athe Hoar Parties@) counterclaimed
against A&M and Mason=s Mill asserting breach of contract,
breach of warranty, and fraud causes of action.  In February, on behalf of the
Hoar Parties, CBY Construction Litigation Counsel sent a settlement proposal to
counsel for A&M and Mason=s Mill.  In the proposal, CBY Construction
Litigation Counsel declared his intention to substitute First Victoria National
Bank for A&M as the true party in interest in the Construction Litigation, Aso that [the Hoar
Parties] may recover from the Bank at least their attorney=s fees, if not the
entire claim.@

In response, First Victoria filed a motion in the
Construction Litigation (to which it was not a party) to disqualify CBY as
counsel for the Hoar Parties.  First Victoria argued disqualification was
required because CBY=s continued representation of the Hoar
Parties would violate Rule 1.09 of the Texas Disciplinary Rules of Professional
Conduct.[1] 
The trial court granted the motion and entered an order of disqualification. 
The Hoar Parties now seek relief from the order by writ of mandamus.[2]

Standard of Review








Mandamus is an extraordinary remedy to correct a trial
court=s abuse of
discretion that cannot be remedied through standard appellate channels.  Walker
v. Packer, 827 S.W.2d 833, 840B44 (Tex. 1992)
(orig. proceeding).  Appeal is not an adequate remedy for a trial court=s erroneous
disqualification of a party=s chosen counsel.  In re Butler,
987 S.W.2d 221, 224 (Tex. App.CHouston [14th Dist.] 1999, orig.
proceeding) (Aappeal from an order granting a motion to disqualify
is inadequate because such an order results in immediate and palpable harm that
disrupts the trial proceeding and deprives a party of the right to have counsel
of its choice@) (citing Schwartz v. Jefferson, 930 S.W.2d
957, 959 (Tex. App.CHouston [14th Dist.] 1996, orig.
proceeding)).  Thus, the sole issue to be resolved in this mandamus proceeding
is whether the trial court abused its discretion in disqualifying the Hoar
Parties= counsel, CBY. 

To show an abuse of discretion with respect to factual
issues, the party requesting mandamus relief must establish that the trial
court could have reached but one decision, given the facts existing and law
applicable to the case.  Johnson v. Fourth Court of Appeals, 700 S.W.2d
916, 917 (Tex. 1985) (orig. proceeding).  AOur question in
the present case, therefore, is whether based on the present disciplinary rules
of professional conduct and the facts of this case, the trial judge had only
one choice, that is, to deny the motion for disqualification.@  Clarke v.
Ruffino, 819 S.W.2d 947, 949 (Tex. App.CHouston [14th
Dist.] 1991, orig. proceeding).  Even if the court of appeals disagrees with
the trial court=s decision, that decision may be disturbed
by mandamus only if it is shown to be arbitrary or unreasonable.  Walker,
827 S.W.2d at 839; Butler, 987 S.W.2d at 226.  As we explain below, we
conclude the trial judge did not abuse his discretion.

Analysis

I.        The Trial Court Did Not
Abuse its Discretion by Disqualifying CBY from Representing the Hoar Parties in
the Construction Litigation.

A.      The trial
court=s order of disqualification and Rules of
Professional Conduct 1.09(a)(2) & (3) and 1.05(b)(3).

In its
order of disqualification (Athe Order@), the trial court stated the following findings and
conclusions:








[T]he Court finds that [CBY] previously
represented First Victoria in the same matter.  That is, [CBY] has previously
represented First Victoria in bankruptcy and collection-related issues
involving A&M that are implicated in the instant attempts by A&M and
[Mason=s Mill] to recover monies from [the Hoar Parties]. 
Both the prior and current representations by [CBY] depended and depend
fundamentally upon a determination of the rights and liabilities of the parties
to the instant litigation in relation to the installation by A&M of
millwork at the Inn at the Ballpark in 2003.

The Court finds that [CBY] is presumably
familiar with, among other confidential information, privileged and
unprivileged, First Victoria=s litigation
strategies, trial tactics, and expectations of collection.  The Court also
finds that [CBY] is presumably familiar with confidential information in First
Victoria=s possession regarding the business affairs of
A&M, as [CBY] billing invoices reveal that discussions between [CBY] and
First Victoria transpired in 2006 regarding the business affairs of A&M and
its owners, Lloyd and Nelwyn Lewis.  As [CBY] asserts numerous defenses and
counterclaims on behalf of its current clients, [the Hoar Parties], the Court
finds that there is a high risk that [CBY] may, at least inadvertently, reveal
client confidences that were entrusted to it by its prior client, First
Victoria.  This risk becomes unacceptable in light of [CBY]=s February 13, 2007 settlement letter to [A&M and
the Lewises], which letter announces an intention to name First Victoria as a
real party in interest so as to recover upon certain counterclaims.

THEREFORE, the Court finds that the
disqualification of [CBY] is warranted pursuant to this Court=s role as an internal regulator of the legal
profession.  The disqualification has no punitive component.  The
disqualification stems, without limitation, from considerations inhering in
Rules 1.05(b)(3), 1.09(a)(2) and 1.09(a)(3) of the Texas Disciplinary Rules of
Professional Conduct.

 

Rule 1.09
provides, in pertinent part:

(a)     Without prior consent, a lawyer who
personally has formerly represented a client in a matter shall not thereafter
represent another person in a matter adverse to the former client:

***

(2)     if the representation in reasonable
probability will involve a violation of Rule 1.05; or

(3)     if it is
the same or a substantially related matter.








Tex.
Disciplinary R. Prof=l Conduct 1.09, reprinted in Tex.
Gov=t Code [vol. 3A],
tit. 2, subtit. G app. A (Vernon Supp. 2007).  Rule 1.05, referenced in Rule 1.09(a)(2),
addresses a lawyer=s duties with respect to a client=s confidential information.  Rule 1.05(b),
pertinent to this action, provides:

(b)     [A] lawyer shall not knowingly:

(1)     Reveal confidential information of a client
or a former client[.]

***

(3)     Use confidential information of a former
client to the disadvantage of the former client after the representation is
concluded unless the former client consents after consultation or the
confidential information has become generally known.

Id. 1.05(b)(1) &
(3) (Vernon 2005).

B.      The Hoar
Parties= complaints concerning the Order.








The Hoar Parties dispute the trial court=s findings and its
conclusion that Rule 1.09(a) (which incorporates Rule 1.05) requires CBY=s
disqualification.[3] 
Specifically, the Hoar Parties appear to contest that CBY=s representation
is adverse to First Victoria=s interests.  In addition, they contend
that the Construction Litigation and the Collection Litigation are not
substantially related.  The Hoar Parties also claim that CBY=s representation
of them in the Construction Litigation in reasonable probability will not
involve a violation of Rule 1.05.  Alternatively, even if CBY were properly
subject to disqualification under Rule 1.09(a), the Hoar Parties maintain that
First Victoria waived any right it may have had to seek disqualification by not
asserting that right in a timely fashion.  

We conclude the trial court was within the bounds of its
discretion in finding (1) adversity between the parties, and (2) that CBY=s representation
of the Hoar Parties in the Construction Litigation in reasonable probability
will involve dislosure of First Victoria=s confidential
information.  We also conclude that the trial court was within the bounds of
its discretion in impliedly finding that First Victoria did not waive its right
to seek disqualification of CBY.  Because the waiver issue potentially 
disposes of the mandamus, we address it first. 

C.      The trial
court did not abuse its discretion in impliedly determining that First Victoria
did not waive its right to seek CBY=s
disqualification.

1.         Timing of pertinent
events.

The
timing of events in the underlying suit impacts our decision on the waiver
issue.  We list the pertinent events below.




 
 
  
 Before
 December 2006
 
 
  
 A&M=s counsel discusses potential conflict with the Hoar
 Parties= counsel; parties agree to pause discussion of issue
 pending scheduled mediation of Construction Litigation
 
 
 
 
  
 12/19/06
 
 
  
 Mediation
 (unsuccessful)
 
 
 
 
  
 01/22/07
 
 
  
 The
 Hoar Parties file counterclaims against A&M
 
 
 
 
  
 02/07/07
 
 
  
 First
 Victoria moves to substitute counsel for A&M in Construction Litigation
 
 
 
 
  
 02/13/07
 
 
  
 The
 Hoar Parties send settlement letter expressing intent to (1) substitute First
 Victoria for A&M and (2) assert claims for affirmative relief against
 First Victoria
 
 
 
 
  
 03/26/07
 
 
  
 Order
 for substitution of counsel
 
 
 
 
  
 04/12/07
 
 
  
 First
 Victoria moves to disqualify CBY from representing the Hoar Parties
 
 




 








2.         The Parties= Arguments Regarding Waiver.

The Hoar
Parties contend that First Victoria waived its right to disqualify CBY because
it waited too long to file its motion.  Vaughan v. Walther, 875 S.W.2d
690 (Tex. 1994) (orig. proceeding) (per curiam) (holding party waived disqualification
complaint by failing to file timely motion); see also Grant v. Thirteenth
Court of Appeals, 888 S.W.2d 466, 468 (Tex. 1994) (orig. proceeding)
(untimeliness of motion to disqualify lends support to suspicion motion is
being used as delay tactic); Abney v. Wal-Mart, 984 F.Supp. 526, 530
(E.D. Tex. 1997) (finding waiver where movant filed motion to disqualify one
month before trial although he knew of conflict for whole year).  According to
the Hoar Parties, after First Victoria learned of the conflict, it waited 23
months before moving to disqualify CBY.  The Hoar Parties calculate this
23-month period from May of 2005, when First Victoria hired CBY to prosecute
the Collection Litigation against A&M.  At that point, the Hoar Parties argue,
First Victoria knew that CBY was already defending the Hoar Parties against
A&M=s claims in the Construction
Litigation.  The Hoar Parties impute this knowledge to First Victoria from John
Cox, A&M=s counsel, who also represented First Victoria after it accepted A&M=s rights in the Construction
Litigation by assignment.[4]








While
Cox may have acted as First Victoria=s counsel after First Victoria
acquired A&M=s rights in the Construction Litigation in July of 2006,
First Victoria was adverse to A&M until the assignment was
consummated.  Given the pre-assignment adversity between A&M and First
Victoria, First Victoria contends that we may not impute knowledge from A&M=s counsel to First Victoria before
July of 2006.  In addition, First Victoria argues that knowledge of the dual
representation cannot, by itself, constitute waiver of any right to seek
disqualification because dual representation, by itself, does not constitute
grounds for disqualification.  See generally Tex. Disc. R. Prof=l Cond. 1.06(b) & (c), comment
11.          

Even if
no waiver is found from May of 2005, the Hoar Parties insist First Victoria=s April 2007 motion to disqualify is
untimely because First Victoria knew of its adversity to the Hoar Parties when
the assignment was effected in July of 2006.  First Victoria concedes it knew
of the adversity between it and the Hoar Parties in July of 2006 but denies
that it waived any rights by not seeking disqualification until April of 2007. 

3.         First Victoria=s motion to disqualify was not
untimely.

According
to First Victoria, after A&M assigned its rights in the Construction
Litigation to First Victoria, A&M=s counsel, John Cox, exchanged
electronic communications with CBY Construction Litigation Counsel about CBY=s apparent conflict of interest. 
This appears to have been an attempt to resolve any conflict.  Citing Texas
Supreme Court authority, First Victoria argues this period of negotiation
cannot be considered a delay in the assertion of its rights.  See In re Epic
Holdings, 985 S.W.2d 41, 52B53 (Tex. 1998) (orig. proceeding) (refusing to find waiver on
seven-month delay between movants= learning of disqualifying facts and
filing motion to disqualify, where, for at least four months, movants had
worked with other party to identify and resolve disqualification issues).  The
record contains neither copies of the electronic communications nor information
concerning their content or the time period during which they were exchanged. 
But, the Hoar Parties do not expressly dispute the claim that Cox and CBY
Construction Litigation Counsel attempted to resolve the conflict after the
assignment.[5] 








First
Victoria claims that the need to disqualify CBY arose only when the Hoar
Parties asserted counterclaims against A&M and shortly thereafter
threatened to join First Victoria as a party against which they would seek
affirmative recovery.  Or, framed slightly differently, even if First Victoria
vaguely was aware of a conflict soon after acquiring A&M=s rights by assignment, the conflict
changed exponentially when the Hoar Parties asserted offensive claims and
appeared on the verge of substituting First Victoria for A&M in order to
have a solvent defendant.[6]  

In its
order, the trial court implicitly agreed with First Victoria: ATh[e] risk [of CBY=s revelation of client confidences
entrusted to it by First Victoria] becomes unacceptable in light of [CBY]=s February 13, 2007 settlement letter
to plaintiffs and defendants, which letter announces an intention to name First
Victoria as a real party in interest so as to recover upon certain
counterclaims.@ The Hoar Parties attack on three grounds the trial court=s conclusion regarding the import of
the February 13 settlement letter.








First,
at oral submission to this court, the Hoar Parties contended that the mere
threat of action against First Victoria is insufficient, as a matter of law, to
give rise to a conflict for CBY.  The Hoar Parties cite U.S. v. Moore,
159 F.3d 1154 (9th Cir.) (holding that defendant=s threat of lawsuit against appointed
attorney did not create actual conflict of interest for attorney), and State
v. Watters, No. 48611-0-I, 112 Wash.App. 1043 (Wash.App. Div. 1, 2002),
2002 WL 1608480 (per curiam) (unpublished decision) (citing Moore and
refusing to find that defendant=s mere threat to sue counsel created an actual conflict), in
support of this argument.  

These
decisions were rendered in criminal cases in which the defendants claimed to
have been denied their Sixth Amendment right to effective counsel.  They do not
apply and are not instructive regarding the propriety of disqualification in
this civil case.  The considerations are different.  As the Moore court
noted, AMoore=s threat to sue Cozens for
ineffective assistance was not inconsistent with Cozens= goal of rendering effective
assistance,@ and Afinding an actual conflict from a mere threat would allow defendants to
manufacture a conflict in any case.@  Moore, 159 F.3d at 1158. 
Thus, a Sixth Amendment analysisBwhich is not involved in this
mandamusBis concerned with actual
effective assistance of counsel, not the appearance thereof. 

The
considerations inhering in civil disqualification include avoiding the
appearance of impropriety to foster public faith in the sanctity of confidences
shared with lawyers.  For this reason, we do not find Moore and Watters
relevant to our question here.  We reject the Hoar Parties= contention that as a matter of law,
a lawyer=s threat to sue its former client on
behalf of its current client is an insufficient basis for disqualification in a
civil case.

Second,
according to the Hoar Parties, their February 2007 threat to substitute First
Victoria as the real party in interest does not undo First Victoria=s waiver of its rights because the
Hoar Parties could not actually recover any sums they might be awarded on their
counterclaims against A&M.  They point out that First Victoria acquired
A&M=s right to payments from the
Construction Litigation but none of its liabilities.  








But,
this ignores one important point.  The Hoar Parties= January counterclaims against
A&M could offset any recovery First Victoria (as A&M=s assignee) may have against the Hoar
Parties even if the Hoar Parties could not successfully assert affirmative
claims for relief against First Victoria.  In short, the counterclaims against
A&M presented First Victoria with a different scenario in January 2007 than
it originally contemplated when it received the assignment in July of 2006BCBY=s mere defense of A&M=s claims against the Hoar Parties.[7] 


Third,
the Hoar Parties argue that because they expressly rescinded their stated
intent to substitute First Victoria as a party against which they will seek
affirmative relief, this cannot be a reason to dislodge First Victoria=s waiver of its right to seek CBY=s disqualification.  This argument is
unconvincing and assumes that the counterclaims themselves are not enough
reason to disqualify CBY.  As we have already held, the face of the litigation
landscape changed dramatically beginning with the counterclaims filed against
A&M.  

After
having considered the Hoar Parties= arguments, we cannot conclude the
trial court abused its discretion by impliedly finding that First Victoria had
not waived its right to seek disqualification of CBY when it filed its motion
to disqualify in April of 2007, three months after the Hoar Parties asserted
counterclaims against A&M.                    

D.      The trial
court did not abuse its discretion in disqualifying CBY pursuant to
Disciplinary Rule 1.09(a).

We turn now to the court=s decision to
disqualify CBY.  Initially, to prevail under 1.09(a), a movant must prove that
the former lawyer is currently representing another client who is adverse to
the former client.[8]   









1.       In the
Construction Litigation, the Hoar Parties are adverse to First Victoria.

In
response to the Hoar Parties= petition for writ of mandamus, First Victoria contends, ACBY does not appear to contestBand, in truth, has never contestedBthat its representation of the [Hoar
Parties] is adverse to the interests of [First Victoria].@  The Hoar Parties reply, A[The Hoar Parties] and [First
Victoria] are both adverse to A&M Casework B not to each other.@ The Hoar Parties thus appear to
dispute that CBY violated the adversity component of Rule 1.09(a).  

However,
their briefing before us and their stance in the trial court show that they
have no real dispute with this.  The Hoar Parties= briefing before us is limited to a
cursory statement of the standard for determining adversity (A>Adversity= is a product of the likelihood of
the risk and the seriousness of its consequences. [Cimarron Agricultural,
Ltd. v. Guitar Holding Co., L.P., 209 S.W.3d 197, 201 (Tex. App.CEl Paso 2006, no pet.)] (citing National
Med. Enters., Inc. v. Godbey, 924 S.W.2d 123, 132 (Tex. 1996)).@).  The Hoar Parties offer no
argument, or citation to authorities, the appendix, or the record, addressing
application of that standard to the facts presented here.  See Tex. R.
App. Proc. 52.3(h).  And, at a trial court hearing, the Hoar Parties conceded
that First Victoria Astepped in the shoes of A&M@ when it accepted the assignment. 
Through this statement, the Hoar Parties admitted both that they are adverse to
A&M and that First Victoria and A&M occupy the same position. 

The trial court did not abuse its discretion by implicitly
finding that First Victoria and the Hoar Parties are adverse.

2.       A reasonable probability
exists that CBY will reveal First Victoria=s confidential information.

Next,
the Hoar Parties contend that the trial court abused its discretion by finding
that disqualification was warranted under Rules 1.09(a)(2) and 1.05(b).  We
turn now to consider those rules and the trial court=s finding.








a.         Rules
1.05 and 1.09 and the Trial Court=s Order.       

As we
noted earlier, the relevant portion of Rule 1.05, which generally relates to
confidential information of a former client, defines Aconfidential information@ in the following way:

(a) AConfidential information@ includes both Aprivileged information@ and Aunprivileged client information.@  Privileged information@ refers to the information of a client protected by the lawyer-client
privilege of Rule 503 of the Texas Rules of Evidence or of Rule 503 of the
Texas Rules of Criminal Evidence ... .  AUnprivileged
client information@ means all information relating to a client or
furnished by the client, other than privileged information, acquired by the
lawyer during the course of or by reason of the representation of the client. 

Tex. Disciplinary R. Prof=l Conduct 1.05(a) (Vernon 2005). 

Rule
1.05(b) primarily states what a lawyer cannot do with confidential
information.  Two subsections of 1.05(b) are mentioned in the trial court=s order; they are set out below: 

(b). . . .[A] lawyer shall not knowingly:

(1) Reveal confidential information of . . . a former client to: 

* * * *

(ii)
anyone else, other than the client, the client=s representatives, or the members, associates, or employees of the
lawyer=s law firm.

* * * * 

(3) Use
confidential information of a former client to the disadvantage of the former
client after the representation is concluded unless the former client consents
after consultation or the confidential information has become generally known.

Id. 1.05(b)(1) & (3). 

Rule
1.09 incorporates 1.05(b) and prohibits the use of confidential information of
a former client in the following way:

Rule 1.09.  Conflict of Interest: Former
Client








(a) Without prior consent, a lawyer who personally has formerly
represented a client  in a matter shall not thereafter represent another person
in a matter adverse to the former client:

* * * * 

(2) if the
representation in reasonable probability will involve a violation of Rule
1.05[.]

 

Id. 1.09(a)(2) (Vernon Supp. 2007).

Before a
trial court may disqualify a lawyer pursuant to Rule 1.09(a)(2), the court must
find a reasonable probability that some aspect of 1.05 will be violated.  The
trial court referred to the two sections of Rule 1.05 set out aboveBthe revelation of confidential
information (1.05(b)(1)) and the use of confidential information to the former
client=s detriment (1.05(b)(3)).  However,
the trial court made a reasonable-probability  finding only as to one of those
sections.  This finding it made with regard to section 1.05(b)(1),  which
prohibits a lawyer from revealing confidential information.  In its order, the
court stated the following:  

$                  
A[T]he court finds that there is a high risk that [CBY]
may, at least inadvertently, reveal client confidences that were entrusted to
it by its prior client, First Victoria.@[9]   

The trial court did not
make a reasonable-probability finding as to section 1.05(b)(3), which involves
the use of confidential information to the detriment of the client.  For this
section of Rule 1.05, the court merely stated the following in the final paragraph
of the order:








THEREFORE, the Court finds that the disqualification of [CBY] is
warranted pursuant to this Court=s
role as an internal regulator of the legal profession. . . . The
disqualification stems, without limitation, from considerations inhering in
Rules 1.05(b)(3), 1.09(a)(2) and 1.09(a)(3) of the Texas Disciplinary Rules of
Professional Conduct. 

 

Rule1.05(b)(3) is not
referred to in any other part of the order, nor is the language of Rule
1.05(b)(3) used in any other part of the order. 

In short, the court made the necessary
finding of reasonable probability only that CBY would reveal client confidencesBsubpart (b)(1) of Rule 1.05.  As a result, we limit
our discussion to that part of Rule 1.05.

b.         While representing First
Victoria in the Collection Litigation, CBY received Aconfidential information.@

Before we
address the court=s conclusion that confidential information in reasonable
probability will be revealed, we must first inquire whether CBY Collection
Counsel received confidential information by representing First Victoria.  See
In re American Airlines, Inc., 972 F.2d 605, 615 (5th Cir. 1992)
(discussing Texas Disciplinary Rule of Conduct 1.09 provision allowing former
client to disqualify counsel Aby showing that his former attorney possessed relevant
confidential information [as] contemplated by Rule 1.09(a)(2)); City of El
Paso v. Salas-Porras Soule, 6 F.Supp.2d 616, 624 (W.D. Tex. 1998)
(addressing Texas and federal ethical standards and holding firm may be
disqualified if movants establish firm possesses relevant confidential
information through its former representation of them).  As we explain below,
we find evidence of this in the record.  

As we
noted earlier, Aconfidential information@ as defined in Rule 1.05 includes
information to which the attorney-client privilege applies as well as Ainformation relating to a client or
furnished by the client, other than privileged information, acquired by the
lawyer during the course of or by reason of the representation of the client.@  Tex. Disc. R. Prof=l Cond. 1.05(a).  CBY=s invoices to First Victoria for work
performed in the Collection Litigation demonstrate that CBY acquired Aconfidential information@ for purposes of Rule 1.05.  








Much of
this information relates to the alleged fraud of A&M and its owners, the
Lewises.  A&M=s owners Lloyd and Nelwyn Lewis personally guaranteed
repayment of the money First Victoria lent to A&M.  The Collection
Litigation included an objection in the Lewises= bankruptcy proceeding to the
dischargeability of their debt on the guarantees.  In a pleading entitled AComplaint to Determine Exception to
Discharge Under 11 U.S.C. ' 523,@ First Victoria alleged that the Lewises (1) fraudulently
misrepresented the financial status of A&M, as well as their personal
financial status, in order to obtain the loan from First Victoria to A&M,
and (2) diverted the loan proceeds and debt collateral from corporate to
personal use.  

Entries
from CBY=s invoices establish that CBY
Collection Counsel sought and received (by e-mail, telephone conversation, and
document exchange) information from First Victoria regarding fraud that A&M=s owners may have perpetrated during
the loan process:

$                  
Exchange e-mails with [First
Victoria] regarding seeking additional information on use of corporate funds
for personal purposes. [12/08/05]

$                  
Telephone conference with [First
Victoria] regarding financial statement issues. [12/14/05]

$                  
Telephone conference with [First
Victoria] regarding intended use of loan proceeds[.] [12/14/05]

$                  
Telephone conference with [First
Victoria] regarding research on A&M Casework matter and payment for certain
of the individuals= vehicles. [02/02/06]

$                  
Received and reviewed research
documents from [First Victoria] regarding A&M Casework bank account; review
notes regarding additional items [First Victoria] believed company paid for on
behalf of individuals; prepare e-mail to [First Victoria]. [02/09/06]

The invoices also contain
an entry suggesting that CBY Collection Counsel may have received information
of fraud directed by A&M=s owners against entities other than First Victoria:

$                  
Telephone calls from Interspace
Construction regarding possible claims against Reggie Lewis regarding tools and
equipment of A&M Casework, indebtedness owed to Interspace by A&M
Casework, and related matters. [04/18/06]








These
invoices support a conclusion that CBY Collection Counsel received confidential
information relating to the Lewises= alleged fraud, both individually and
in connection with A&M.  And, although CBY complains that First Victoria
did not highlight any specific confidential information that CBY Collection
Counsel learned while representing First Victoria, the above time entries more
than adequately show that CBY Collection Counsel learned confidential
information as the term is defined under Rule 1.05(a).  See Phoenix
Founders, Inc. v. Marshall, 887 S.W.2d 831, 834 (Tex. 1994) (orig.
proceeding) (discussing Coker=s conclusive presumption that
confidences were imparted to counsel, citing definition of Aconfidential information,@ and stating Avirtually any information relating to
a case should be considered confidential@); Clarke, 819 S.W.2d at 950
(noting that then-new disciplinary rules take more expansive view of
confidential information than former rules of professional responsibility,
which were tied to privileged information or secret information requested to be
guarded or that would embarrass or detrimentally impact client). 

The Hoar
Parties presented affidavits from CBY Collection Counsel and CBY Construction
Litigation Counsel in an effort to disprove that any confidential information
was given to CBY Collection Counsel.  The Hoar Parties contend the testimony of
these attorneys conclusively refutes that confidential information was imparted
to CBY.[10]  In his
affidavit testimony, CBY Collection Counsel made these statements: 

$                  
At that time [during the
Collection Litigation], I knew nothing about this [Construction Litigation]
except as was disclosed to me by my law partner, [CBY Construction Litigation
Counsel], and from A&M=s then-counsel
of record, John Cox, all of which information I understand was within the
publicly available pleadings.








$                  
I received no information from
[First Victoria] as to the value or validity, if any, of A&M=s claims in the [Construction Litigation], or as to
the claims, defenses, and counterclaims asserted by A&M or any of the [Hoar
Parties] in the [Construction Litigation].

$                  
During my conversations with [CBY
Construction Litigation Counsel], Mr. Tempio [an employee of First Victoria],
and Mr. Cox, I learned nothing outside the public pleadings regarding the facts
of [the Construction Litigation].  Mr. Tempio provided me no confidential facts
regarding A&M=s claims and defenses in this action, nor do I have
reason to believe he ever possessed knowledge of such facts.  Similarly,
neither [CBY Construction Litigation Counsel] nor Mr. Cox provided me with any
confidential information regarding A&M=s
claims and defenses or [the Hoar Parties]=
claims and defenses in this action and ... I have never spoken to the principals
or employees of A&M Casework, nor have I ever had access to any
confidential documents or information of A&M Casework.

At most, these statements
tend to show that CBY Collection Counsel received no confidential information about
the Construction Litigation during his work for First Victoria in the
Collection Litigation.  However, under Rules 1.09(a)(2) and 1.05(b), we, like
the trial court, must ask whether he received confidential information, as
defined by Rule 1.05(a), from or while representing First Victoria in the
Collection Litigation.  His testimony does not refute that during the
course of the Collection Litigation or by reason of his representation of First
Victoria, he received information that satisfies the definition of Aconfidential information@ under Rule 1.05(a).[11]








We
conclude that either directly from First Victoria or simply by representing
First Victoria in the Collection Litigation, CBY Collection Counsel received
information regarding fraud that may have been perpetrated by A&M and/or
its owners.  This information constitutes Aconfidential information@ under Rule 1.05(a).   In making an
implicit finding to this effect, the trial court did not abuse its discretion.

c.         A threat of disclosure
exists because First Victoria=s Aconfidential information@ is relevant to the Construction
Litigation.

Having
found that CBY received confidential information of First Victoria, we must
consider the evidence that a threat exists that CBY might reveal this
information.  In pleadings filed on behalf of the Hoar Parties in the
Construction Litigation, CBY alleged A&M=s fraud, fraudulent inducement,
breach of warranty, and breach of contract in defense of A&M=s claims and in counterclaims against
A&M for damages.  The Hoar Parties allege that A&M, through the acts of
its owner, intentionally misrepresented the suitability of its materials for
the Project, and falsified a sample of the materials, to induce Hoar Construction
to enter into the subcontract with A&M.  The information CBY obtained while
representing First Victoria in the Collection Litigation may be relevant to
these fraud allegations in the Construction Litigation. First Victoria has
satisfied its burden of showing Athat some substantive conversations
between the former client and the attorney occurred which contained information
relevant to the present litigation.@  Abney, 984 F.Supp. at 530
(citing Islander East Rental Program v. Ferguson, 917 F.Supp. 504, 512B13 (S.D.Tex. 1996)). 








The Hoar
Parties dispute any connection between First Victoria=s fraud allegation in the Collection
Litigation (arising from loan procurement) and their own fraud allegation in
the Construction Litigation (arising from representations of materials quality
and suitability).  Indeed, at oral argument to this court, First Victoria
conceded that the allegations made in the respective suits involve Adifferent kinds of fraud.@  However, any difference in the
nature of the fraud at issue in each action does not diminish the potential for
CBY to divulge First Victoria=s confidential information.  Cf. Butler, 987 S.W.2d at
226 (refusing mandamus relief where trial court found substantial relation
between two suits for bad faith insurance practices in spite of one=s being for wrongful policy
cancellation and the other=s for erroneous denial of coverage); City of El Paso,
6 F. Supp.2d at 624B25 (finding reasonable probabililty confidences would be
disclosed where firm member commenced deficiency judgment collection action for
municipality against company to which other firm member previously provided
unrelated tax advice).  Any party involved in the Construction Litigation would
desire information about other potential fraudulent actions of A&M. 

The
claims each party asserted and/or defended against A&M were different, but
given the Hoar Parties= sense of having worked together with First Victoria to
defeat the common adversary, a finding that CBY may inadvertently reveal a
confidence gained during its representation of First Victoria is not
unreasonable.  For example, in 2004, the Hoar Parties raised fraud as a defense
in the Construction Litigation  to A&M=s third-party claims for breach of
contract, quantum meruit, and mechanics= lien.  In 2006, in the Collection
Litigation, CBY Collection Counsel received confidential information from First
Victoria, or by representing First Victoria, regarding the possibility that
A&M=s owners misrepresented their and
A&M=s financial status to First Victoria
and diverted corporate property to personal use; it appears that CBY Collection
Counsel also may have received information regarding fraud by A&M against
another company.  In 2007, in the Construction Litigation, the Hoar Parties
asserted a counterclaim against A&M seeking to recover (a) actual damages
caused by (among other theories) A&M=s fraud and fraudulent inducement,
(b) punitive damages, and (c) attorney=s fees.  While the Hoar Parties= post-Collection Litigation adoption
of an offensive posture does not necessarily suggest that CBY has divulged
information from the Collection Litigation in advising the Hoar Parties in the
Construction Litigation, the potential exists for CBY=s inadvertent disclosure of such
information.

d.         The test for
disqualification is the reasonable probability of disclosure, not actual
disclosure.








In
affidavit testimony presented to the trial court, CBY Construction Litigation
Counsel acknowledged the conversations with CBY Collection Counsel that were
itemized on the CBY invoices to First Victoria.  He denies, however, that he
learned any confidential facts or information during those conversations
regarding facts or claims in the Construction Litigation.  He stated:

During my
two conversations with [CBY Collection Counsel] and one overheard conversation
between [CBY Collection Counsel] and Mr. Tempio [First Victoria=s vice president] (in which my attendance was
disclosed to Mr. Tempio), I learned nothing outside the public pleadings
regarding the facts of this [Construction Litigation].  Mr. Tempio provided me
no confidential facts regarding A&M=s
claims and defenses in this [Construction Litigation], or of [First Victoria]=s claims and defenses.  Similarly, [CBY Collection
Counsel] provided me no confidential information regarding A&M=s or [First Victoria]=s claims and defenses in this [Construction Litigation].

 

CBY Construction
Litigation Counsel does not categorically deny receipt at any other time of
information from CBY Collection Counsel or First Victoria, nor is there any
indication whether he uses the term Aconfidential information@ in the manner defined in Rule
1.05(a) or in a more pedestrian sense. Even if CBY Construction Litigation
Counsel and CBY Collection Counsel testified strenuously that information has
never passed between them or among other CBY attorneys with regard to the two
matters, the propriety of disqualification rests not on whether confidential
information has been divulged or used to the detriment of the
former client.  Disqualification is appropriate when there is a reasonable
probability of such information=s being used or divulged.  Tex. Disc.
R. Prof=l Cond. 1.09(a)(2).

The
Texas Supreme Court has stated, AThe test for disqualification is met
by demonstrating a genuine threat of disclosure, not an actual
materialized disclosure.@  Grant, 888 S.W.2d at 467 (emphasis in original). 
The policy behind the rule is that Aany rule focusing on actual
disclosure would place a virtually insurmountable burden on the party seeking
disqualification, since the only persons who know whether confidences were
actually shared will generally be the very lawyers seeking to avoid
disqualification.@  Id.   








In Grant,
the trial court disqualified defense counsel because it hired a secretary who
had been employed by the plaintiffs= lawyer and had worked on the case. 
Before the motion to disqualify was filed, the hiring firm became aware that
the secretary had worked on the case during her previous employment, but simply
instructed her not to discuss her prior work. She was not removed from contact
with the case.   The court of appeals granted mandamus directing the trial
court to vacate the order disqualifying the firm on the strength of testimony
from the defense lawyers that the secretary had actually revealed no
confidences to them.  The Supreme Court rejected the court of appeals= reasoning, noting the defense firm=s lack of institutional procedures
designed to guard against passage of information from employees who previously
worked on matters adverse to firm clients.  Applying the rule that the threat
of disclosure rather than actual disclosure is the basis for disqualification,
the Supreme Court issued a conditional writ of mandamus directing the court of
appeals to vacate its judgment. 

In
short, a reasonable probability exists that First Victoria=s confidential information, as
defined in Rule 1.05(a), will be divulged because CBY is representing the Hoar
Parties in the Construction Litigation.  This reasonable probability is not
based on any presumption that CBY lawyers will act improperly.  However, while
working for First Victoria during the Collection Litigation, CBY obtained
confidential information that is relevant to claims asserted by their clients
the Hoar Parties in the Construction Litigation.  The reasonable probability of
disclosure or use is not affected by CBY Construction Litigation Counsel=s testimony that no confidential
information was exchanged during his conversations with CBY Collection Counsel
during the Collection Litigation.  Cf. Grant, 888 S.W.2d at 467B68; In re Bell Helicopter Textron,
Inc., 87 S.W.3d 139, 148 (Tex. App.CFort Worth 2002, orig. proceeding) (Aactual disclosure of confidences need
not be proven before disqualification is required@).

Conclusion








CBY=s activities in the Collection Litigation,
beginning with the counterclaims it filed against A&M in January of 2007
and including its threat to substitute First Victoria as a party of interest in
place of A&M, created a high degree of adversity between First Victoria and
the Hoar Parties.  The evidence presented to the trial court also showed that
CBY obtained confidential information of First Victoria in the Collection
Litigation.  Some of this informationBespecially the
confidential information related to fraud allegedly committed by the Lewises
and by A&MBis relevant to the Hoar Parties= counterclaims
against A&M and certainly would be of interest to any party involved in the
Construction Litigation with A&M.

On this record, we cannot say that the trial court abused
its discretion in disqualifying counsel.  We deny the Hoar Parties= petition for writ
of mandamus.          

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

Petition Denied
and Opinion filed May 29, 2008.

Panel consists of
Justices Yates, Fowler, and Guzman.

 









[1]  Rule 1.09, discussed in detail infra,
addresses limits on a lawyer=s freedom to
represent a client in a manner adverse to a former client.  





[2]  Two other partiesBSt.
Paul Fire & Marine Insurance Company and Hospitality Headquarters, Inc.Bare also named as relators, but it appears from
statements made by Hoar Construction and Landry=s that they are no longer in the suit.  Because the record does not
reveal their current status, we have left their names out of our discussion.
However, their presence (or absence) has no impact on the outcome of the
appeal.  





[3]  AThe Texas
Disciplinary Rules of Professional Conduct do not determine whether counsel is
disqualified in litigation, but they do provide guidelines and suggest the
relevant considerations.@  National Medical Enterprises, Inc. v. Godbey,
924 S.W.2d 123, 132 (Tex. 1996) (orig. proceeding) (citing Henderson v.
Floyd, 891 S.W.2d 252, 254 (Tex. 1995) (per curiam)); see also Anderson
Producing Inc. v. Koch Oil Co., 929 S.W.2d 416, 421 (Tex. 1996) (discussing
Texas courts= use of disciplinary rules as relevant guidelines for
motions to disqualify, particularly where no party offers countervailing
considerations); Spears v. Fourth Court of Appeals, 797 S.W.2d 654, 656
(Tex. 1990) (orig. proceeding) (same).  When parties to a disqualification
dispute confine their arguments to whether a particular attorney has complied
with the disciplinary rules, courts have accordingly directed their analyses to
the rules.  See, e.g., id.; In re Users System Services, Inc., 22
S.W.3d 331, 334 (Tex. 1999) (orig. proceeding) (A[t]echnical compliance with ethical rules might not foreclose
disqualification, and by the same token, a violation of ethical rules might not
require disqualification[;] however, the parties and the lower courts have all
focused the issue of [disqualification] on Rule 4.02; hence so do we.@).

 





[4]  First Victoria did not contract with Mr. Cox for
representation after the assignment, although it concedes Cox provided de
facto representation for First Victoria for a period of time between
execution of the assignment in July of 2006 and First Victoria=s motion to substitute counsel for A&M on February
7, 2007.  The motion was unopposed, and the trial court granted the
substitution on March 26, 2007.   First Victoria=s substituted counsel prosecuted the motion to disqualify CBY in the
Construction Litigation and represents First Victoria in this mandamus
proceeding.





[5]  In an affidavit presented to the trial court, CBY
Construction Litigation Counsel testified:

 

[T]he existence of the parties= competing interests against A&M has been
well-known since the commencement of the litigation.  My understanding from
[First Victoria]=s prior counsel, John Cox, was that his then-client,
[First Victoria], was expressly aware of the parties= competing interests against A&M Casework, and
that [First Victoria] made no assertion that confidential information had been
disclosed to [CBY Collection Counsel], or that any grounds existed to
disqualify CBY from continued representation of [the Hoar Parties] in the
present litigation.  It was my understanding from Mr. Cox that, although [First
Victoria] had not expressly waived any potential conflict, it had done so
impliedly, and with full knowledge of the facts and the parties= contentions. 

 

Use of the phrase Acompeting
interests against A&M Casework@
suggests that CBY Construction Litigation Counsel refers to the time before
A&M executed the assignment to First Victoria (because at that point First
Victoria no longer had a claim against A&M), but First Victoria was not, at
that time, Mr. Cox=s Athen-client.@





[6]  See comment 10 to Tex. Disc. R. Prof=l Cond. 1.09 (AA
waiver is effective only if there is consent after disclosure of the relevant
circumstances, including the lawyer=s
past or intended role on behalf of each client, as appropriate.@).





[7]  After all, CBY did not assert the Hoar Parties= counterclaims against A&M until more than two
years after originally answering A&M=s
claims. 





[8]  Rule 1.09(b) provides that except in certain
instances not applicable here, lawyers in a law firm may not represent a client
if any one of them practicing alone would be prohibited from doing so under
Rule 1.09(a).  Tex. Disc. R. Prof=l
Conduct 1.09(b).  Thus, it is of no moment that a different CBY lawyer
represents the Hoar Parties in the Construction Litigation than represented
First Victoria in the Collection Litigation.





[9]  Although the language in the orderBa Ahigh risk@ that confidences may be revealedBdoes not track the Areasonable
probability@ language of Rule 1.09(b)(2), the Hoar Parties do not
complain about it.  In any event, the language the court used imposes a higher
standard than is found in the Rule.  ARisk@ is defined as Athe
possibility of suffering harm or loss@; Aprobability@ is
defined as Athe likelihood that a given event will occur.@  Webster=s
Third New International Dictionary 1961,
1806 (1993).  These words are synonyms (although Arisk@ contemplates a negative or at least potentially
negative event while Aprobability@
does not).  The trial court thus found a high, rather than reasonable,
probability that confidential information would be used.





[10]  The Hoar Parties also dispute that there is a
reasonable probability any such confidential information will be divulged by
virtue of CBY=s representation in the Construction Litigation.  This
issue is discussed infra.





[11]  The affidavit testimony of CBY Construction
Litigation Counsel is not material to the question whether CBY received Aconfidential information,@ for purposes of Rule 1.09(a)(2) and Rule 1.05(a), by
representing First Victoria in the Collection Litigation.  CBY Construction
Litigation Counsel does not offer (if he is even competent to offer) evidence
of what First Victoria did or did not share with CBY Collection Counsel or what
information CBY Collection Counsel may have obtained in the course of
representing First Victoria. The testimony of CBY Construction Litigation
Counsel naturally addresses what information he, as counsel for the Hoar
Parties, learned (or, rather, did not learn) when he and CBY Collection Counsel
conversed in April and May, 2006.  We discuss this testimony in our analysis of
the trial court=s finding that there is reasonable probability that
CBY will divulge Aconfidential information@ in the Construction Litigation.